# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID MOORE d/b/a MOORE FAMILY FARMS, *et al.*, | Case No.: 20-cv-252 (PJS/HB) |
| Plaintiffs, | |
| v. | |
| C.H. ROBINSON WORLDWIDE, INC. *et al.*, | |
| Defendants. | |

| | |
|---|---|
| JMR FARMS, INC., | Case No.: 20-cv-879 (PJS/HB) |
| Plaintiffs, | |
| v. | |
| C.H. ROBINSON WORLDWIDE, INC. *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF JMR FARMS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff JMR Farms, Inc.'s ("Plaintiff" or "JMR") Motion for Leave to File First Amended Class Action Complaint (ECF 47) and memorandum of law in support thereof (ECF 49) ignore the fundamental precept that punitive damages are an extraordinary remedy, generally disfavored by the law, to be allowed only in rare situations and only with the utmost caution. Plaintiff cavalierly seeks this extraordinary relief, in a run-of-the-mill breach of contract action between sophisticated parties of equal bargaining power, attempting to put a square peg in a round hole to improperly gain illicit tactical advantage. Worse, Plaintiff does so by ignoring Minnesota law, disregarding thirty years

of precedent from courts in this district, and abusing the Federal Rules of Civil Procedure. Plaintiff's misuse cannot stand.

Plaintiff's Motion and memorandum are entirely (and fatally) bereft of factual citation, and fail to comport with Minnesota law. Ostensibly, the primary focus of Plaintiff's Motion is the addition of allegations pertaining to punitive damages—allegations which are at best hyperbolic, and at worst appear to demonstrate a continued pattern of bad faith. Plaintiff's argument in support of its amendments fails to acknowledge the inflammatory nature of the proposed allegations, which blithely (and inappropriately) accuse Defendants of criminal fraud. Indeed, this is precisely the type of salacious allegations that Minn. Stat. § 541.191 (along with Minn. Stat. § 541.20, also referred to as the "gatekeeping statute" herein) is designed to protect against.

Plaintiff's Motion should be denied for three primary reasons. *First*, and notwithstanding Plaintiff's protestations to the contrary, the Minnesota gatekeeping statute, which requires Plaintiff to demonstrate "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others," applies to amendments seeking to add punitive damages. Minn. Stat. § 549.20, subd. 1(a). What is more, precisely to prevent the sort of conclusory and baseless allegations of criminal conduct proposed by Plaintiff, Minnesota law requires that a motion seeking leave to allege punitive damages must be accompanied by "one or more affidavits showing the factual basis for the claim."

*Second*, and relatedly, under this rigorous standard, Plaintiff's request for leave to add allegations in support of punitive damages must fail. Plaintiff's conclusory

allegations that CHR breached a fiduciary duty to Plaintiff, and therefore that punitive damages are available, are founded on nothing other than Plaintiff's conjecture. Plaintiff fails to establish a *prima facie* showing that "clear and convincing" ***evidence*** exists that the alleged acts of CHR show deliberate disregard for the rights of Plaintiff and the putative class, as Plaintiff and the putative class would bear the burden of proving. Because Plaintiff cannot make the minimum showing required by Minnesota law, Plaintiff's attempted insertion of the inflammatory proposed amendments is impermissible.

***Third***, even under Federal Rule of Civil Procedure Rule 15, Plaintiff's Motion must be denied, because the proposed allegations fail under both Rules 9(b) and 12(b)(6), and the amendments are thus futile. The allegations and argument that Plaintiff seeks to include baldly assert that CHR was somehow engaged in criminal fraud. These allegations of fraud trigger the heightened pleading standard of Rule 9(b). Yet Plaintiff proposes to allege criminally fraudulent conduct in only the most conclusory manner, falling well short of the heightened pleading standard for fraud. And in any event, Plaintiff has failed to sufficiently allege facts demonstrating that CHR engaged in fraud of any kind, criminal or otherwise. Indeed, much as the Minnesota gatekeeping statute prevents would-be plaintiffs from asserting allegations for punitive damages without sufficient factual basis, so too does Federal Rule 9 prevent similarly argumentative and conclusory allegations of fraud.

Because Plaintiff here satisfies neither standard, it would be erroneous to permit Plaintiff to inject its proposed punitive damages allegations, and its Motion provides no

basis for the Court to upend thirty years of precedent applying Minnesota law.  For all these reasons, Plaintiff's Motion fails.

## RELEVANT BACKGROUND

In its class action Complaint, Plaintiff purports to allege several causes of action against CHR, including breach of fiduciary duty.  (ECF 1 ¶¶ 186-208.)  According to Plaintiff, CHR's alleged breach of its fiduciary duty, entitles Plaintiff to amend its Complaint to seek punitive damages.  (ECF 49 at 14-15.)  Plaintiff bases its claim for breach of fiduciary duty on its contractual relationship with CHR.  (ECF 1 ¶¶ 187-188, 194, 196.)  To be clear, while the contracts between Plaintiff and CHR generically referred to CHR as Plaintiff's "exclusive sales agent" (*see id.* ¶ 187), the contracts did not give Plaintiff the requisite amount of control over CHR's operations for the supposed agency relationship to give rise to a fiduciary duty.  In fact, the contracts gave Plaintiff no right of control at all over CHR's operations.  (*See, e.g.*, ECF 1 ¶ 70.03(a); ECF 1-2 at PDF Page 3 ¶ 5(c) ("The parties agree that C.H. Robinson shall have full control of the times when, the places where, the parties to whom, the methods and prices for which the PRODUCTS are sold, and the authority to sell to customers on an FOB, Delivered, Re-consignment, Open, or Price-After-Sale.").)  Plaintiff admits as much.  (ECF 49 at 5 ("The Agreement granted Defendants complete control over the terms it negotiated for the sale of the produce.").) Thus, even under the facts alleged by Plaintiff, Plaintiff did not exercise sufficient control over CHR for CHR to be considered Plaintiff's agent, or for a fiduciary duty to arise under any purported agency relationship.

Undaunted by the flaws of its breach of fiduciary duty claim, Plaintiff now seeks leave to add punitive damages allegations. The vast majority of Plaintiff's punitive damages allegations merely parrot the language of the Minnesota gatekeeper statute, which statute Plaintiff argues should not apply, alongside allegations already residing in the Complaint. (*See, e.g.*, ECF 52 ¶ 220 ("A breach of fiduciary duty can give rise to punitive damage claims under Minnesota law. CHR breached its fiduciary duty to Plaintiffs and acted with deliberate disregard for the rights of Plaintiffs by its conduct of issuing false accountings of freight charges, seed rebates and pallet rebates."); *see also, e.g.*, *id.* ¶¶ 220-224.) These allegations do not save Plaintiff's fiduciary duty theory of relief, nor do they demonstrate why allegations concerning punitive damages are appropriate. Perhaps realizing this, to salvage their pursuit of punitive damages, Plaintiff alleges—without evidence, foundation, or detail—that CHR's conduct amounted to ***criminal*** mail and wire fraud. (*Id.* ¶ 225.) Specifically, Plaintiff alleges:

> Among the standards for imposition of punitive damages in Minnesota is the requirement that the fact finder evaluate "the severity of any criminal penalty to which the defendant may be subject." CHR sent Plaintiffs its false sales reports and liquidations by means of email or the US Postal Service. Plaintiffs' payments were sent to them through interstate banking channels. CHR engaged in a pattern conduct (sic) by transmission of false liquidations which would qualify as wire and mail fraud by means of instrumentalities of interstate commerce. Thus, the potential criminal penalties under 18 U.S.C. §§ 1341 and 1343 for mail fraud and wire fraud should be considered in any assessment of punitive damages.

(*Id.*) Plaintiff's baseless accusations, or, more accurately, its foundationless argument, shock the conscience, and serve no purpose in this litigation other than to attempt to

poison the Court and the jury pool's opinion of CHR. Plaintiff points to no criminal investigation. No charges. No indictment. No evidence whatsoever.

Indeed, despite the fact that CHR has produced hundreds of thousands of pages of documents and Plaintiff has taken the deposition of a supposed fact witness and two Rule 30(b)(6) representatives, Plaintiff fails to proffer any evidence at all in support of its Motion, whether related to its spurious allegations of supposed criminal wrongdoing, or its allegations that CHR "deliberate[ly] disregard[ed]" its rights. Instead, it requests that this Court grant it leave to seek the extraordinary remedy of punitive damages based solely on its own speculative and conclusory allegations. Although the parties are a year and a half into this litigation, Plaintiff's proposed amendments add no additional detail of CHR's supposed scheme—Plaintiff could have included these "amendments" on day one. For the reasons stated below, the Court should reject Plaintiff's request.

## ARGUMENT

Critical to the Court's inquiry here is the question of what legal standard to apply to Plaintiff's Motion for leave to add allegations for punitive damages. Plaintiff appears to advocate for something of a half-measure, giving lip service to Minn. Stat. § 549.191, but arguing that under the gatekeeping statute it need only show that the *type* of Minnesota law claim that it asserts is generally amenable to punitive damages. Yet Plaintiff's mischaracterization undermines the whole point of Minnesota's gatekeeping statute, which is to prevent abusive and potentially frivolous allegations of punitive damages that serve only to provide plaintiffs with unwarranted leverage. *See Gamma–10*

*Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994); *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866-67 (D. Minn. 1994).

Punitive damages are the (rare) exception, not the rule. They are "disfavored and are, therefore, allowed only 'with caution and within narrow limits.'" *Greer v. Walsh Constr. Co.*, No. CV 15-465 (PAM/JSM), 2016 WL 6892109, at *7 (D. Minn. Feb. 23, 2016) (citing *Lewis v. The Equitable Life Assurance Soc.*, 389 N.W.2d 876, 891 (Minn. 1986)). The Minnesota gatekeeping statute and thirty years of precedent from courts in this district provide the framework for the Court to determine the scope of those "narrow limits." The Court here should fully apply the Minnesota standard for pleading punitive damages, and pursuant to this standard, reject Plaintiff's attempt to add incendiary allegations for punitive damages based on nothing more than its own foundationless (and false) assertions and argument.

## I.     Minn. Stat. § 549.191 Provides the Proper Standard, Not Federal Rule 15

"As part of the Tort Reform Act of 1986, the Minnesota legislature enacted § 549.191 prohibiting a prayer for punitive damages in the initial complaint and requiring a prima facie showing to the court as a condition of seeking such damages in an amended complaint." *Fournier v. Marigold Foods, Inc.*, 678 F. Supp. 1420, 1422 (D. Minn. 1988). Courts in this district have explained, "the Minnesota Legislature adopted, in 1986, the [evidentiary based] pleading requirements of Section 549.191 in order to deter certain practices in the presentment of punitive damage claims which were thought to be abusive . . . ." *Ulrich*, 848 F. Supp. at 866-67. Indeed, the Eighth Circuit has recognized that the Minnesota Legislature enacted the gatekeeping statute "to prevent frivolous

punitive damage claims by allowing a court to determine first if punitive damages are appropriate." *Gamma–10 Plastics, Inc.*, 32 F.3d at 1255. Such is the case with Plaintiff's proposed allegations here.

To guard against frivolous and abusive allegations of punitive damages, Minnesota law provides that a plaintiff may not assert punitive damages in its initial complaint, but rather must later move to amend the pleadings to claim punitive damages. Minn. Stat. § 549.191. Such a motion must assert "the applicable legal basis under 549.20 or other law for awarding punitive damages" and "and must be ***accompanied by one or more affidavits showing the factual basis for the claim.*** *Id.* (emphasis added). A court may grant the motion only if it finds *prima facie* evidence of an entitlement to punitive damages. *Id.*; *see also* Minn. Stat. § 549.20.

For more than thirty years since the enactment of Minn. Stat. § 549.191, courts in this district consistently applied § 549.191 and § 549.20 in determining whether or not to permit the assertion of claims for punitive damages in federal court when the claims are premised on Minnesota state law causes of action. *See, e.g.*, *Rilley v. MoneyMutual, LLC*, No. 16-CV-4001 (DWF/LIB), 2018 WL 6920764, at *3 (D. Minn. Dec. 13, 2018); *Inline Packaging, LLC v. Graphic Packaging Int'l LLC*, No. 15-cv-3183 (ADM/LIB), 2018 WL 9919941, (D. Minn. Mar. 8, 2018), *objections overruled*, 351 F. Supp. 3d 1187 (D. Minn. 2018), *aff'd*, 962 F.3d 1015 (8th Cir. 2020); *Coy v. No Limits Educ.*, No. 15-cv-93 (BRT), 2016 WL 7888047 (D. Minn. Apr. 1, 2016); *Kuehn v. Shelcore, Inc.*, 686 F. Supp. 233, 235 (D. Minn. 1988); *Fournier*, 678 F. Supp. 1420, 1422 (D. Minn. 1988).

Recently, however, some courts in this district have declined to apply the rigorous analysis proscribed by § 549.191 and § 549.20, and instead opted to apply Federal Rule 15's standard that leave to amend should be "freely" granted when "justice so requires." *See, e.g.*, *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, No. 2017 WL 5187832 at *3 (D. Minn. July 27, 2017); *but see Inline Packaging, LLC,* 2018 WL 9919941 at *5-6. Plaintiff here latches on to this recent phenomenon, citing approvingly to several recent decisions that purportedly support its position. (*See* ECF 49 at 9-11.) Yet Plaintiff provides no analysis or support concerning ***why*** the Court here need not adhere to the established Minnesota rule and practice, and Plaintiff fails to distinguish the other contemporaneous authority continuing the thirty years of precedent applying Minnesota law. A careful analysis of the applicable law demonstrates why: the Minnesota gatekeeping statute provides the relevant and mandatory standard Plaintiff's must, but did not—and cannot—meet.

In both *Inline Packaging, LLC* and *Rilley*, Magistrate Judge Brisbois's meticulous examination expressly refutes the supposed basis for a federal court's departure from § 549.191—the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), particularly as analyzed by *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, which was the first federal court in Minnesota to depart from the § 549.191 standard, and which analysis Magistrate Judge Brisbois rejected. *See Inline Packaging, LLC*, 2018 WL 9919941 at *4 (rejecting the analysis of *Shady Grove* set forth in *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*). Magistrate Judge Brisbois exhaustively analyzed the issue of the

proper standard to guide the Court's inquiry, and held in each instance that there is no reason to depart from the Minnesota gatekeeping statute analysis.

As explained in *Rilley*, the *Shady Grove* decision did not modify the *Erie* doctrine, which mandates that a federal court resolving a dispute not directly implicating a federal question must apply state substantive law, in a manner that would have no effect on its application to Minn. Stat. § 549.191 in federal court. 2018 WL 6920764 at *4-5 ("The reasoning in the portions of *Shady Grove* which gained the approval of a plurality of the United States Supreme Court do not indicate that *Erie* concerns mandate anything other than the application in the present case of Minnesota Statute § 549.191."). *Shady Grove* involved a conflict between Federal Rule of Civil Procedure 23 and New York Civil Practice Law § 901(b), which the *Shady Grove* plurality highlighted was "to be found in New York's *procedural* code[.]" 559 U.S. at 409 (emphasis added). Therefore, in *Shady Grove* the Supreme Court held that the New York state procedural law, which would prohibit a class action seeking a penalty even if Federal Rule 23's requirements are met, directly conflicted with Rule 23—reversing the Second Circuit. *Id.* at 399-400.

Unlike the New York state procedural statute and the Federal Rule at issue in *Shady Grove*, the application of Minn. Stat. § 549.191 does not preclude application of the Federal Rule. *Inline Packaging, LLC*, 2018 WL 9919941 at *4-5 ("the type of direct conflict seen in *Shady Grove* is simply not present when this Court compares Rule 15 and Minnesota Statute § 549.191"). Indeed, several courts in this district have expressly concluded that "[t]here is no direct conflict between Federal Rule 15(a) and section 549.191." *See, e.g.*, *Security Sav. Bank v. Green Tree Acceptance, Inc.*, Civ.

No. 3-89-28, 1990 WL 36142, *2 (D. Minn. March 22, 1990) (stating that Rule 15 can "peacefully co-exist" with Minnesota Statute § 549.191).  Unlike Rule 23, which was analyzed in *Shady Grove* and found to be mandatory upon the proper evidentiary showing, Rule 15 is entirely discretionary.  *See Inline Packaging, LLC*, 2018 WL 9919941 at *5 (finding that because of the discretion allowed a Federal Court under Rule 15(a), it "does not preclude or even conflict with the consideration of whether a party has also complied with Minnesota Statute § 549.191") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("[T]he grant or denial of an opportunity to amend [under Rule 15(a)] is within the discretion of the District Court, [although] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion."); *Pliscott v. Colvin*, No. 13-cv-1390 (SRN/SER), 2014 WL 3955229, *2 (D. Minn. Aug. 13, 2014) ("The determination as to whether to grant leave [to amend under Rule 15(a)(2)] is entrusted entirely to the discretion of the Court.").  Because Federal Rule 15 is discretionary, it does not conflict with Minn. Stat. § 549.191, and the Court should apply the *Erie* doctrine analysis.  *Security Sav. Bank*, 1990 WL 36142 at *2 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740 at 752-53 (1980)).

Under the *Erie* analysis, as explained by Magistrate Judge Brisbois, "unlike the procedural law of New York Civil Practice Law § 901(b), Minnesota Statute § 549.191 is a substantive law defining a substantive right under Minnesota law."  *Rilley*, 2018 WL 6920764 at *5.  Thus, the Minnesota gatekeeping statute is substantive, not procedural, and controls the Court's inquiry here.  "The Courts in the District of Minnesota—taking guidance from Minnesota State Courts and the Minnesota Legislature—have always on

Minnesota state law claims historically applied *Erie* doctrine substantive law deference to Minn. Stat. § 549.191 and § 549.20, and therefore, have given the Minnesota statutory scheme substantive law status." *Id.* (collecting cases). Moreover, the Minnesota Rule of Civil Procedure is virtually identical to Federal Rule 15, and yet the Minnesota Legislature enacted the "clear and convincing <u>evidentiary</u> threshold showing necessary to punitive damages"—which demonstrates that "Minn. Stat. § 549.191 is in effect and by intent substantive in nature." *Id.* at *6 (emphasis original).

Indeed, the *Rilley* decision recognized that federal courts declining to apply Minn. Stat. § 549.191 in determining whether or not to allow punitive damages allegations when the claims are premised on Minnesota state law will yield disparate litigation outcomes, because it would greatly lower the substantive standard by which a plaintiff must show its entitlement to plead and pursue punitive damages on Minnesota state law claims. 2018 WL 6920764 at *6.[1] Thus, Magistrate Judge Brisbois concluded that, in the absence of binding authority to the contrary, ***substantive*** Minnesota state law should provide the standard for a motion seeking leave to add punitive damages allegations. *Id.* at *7. So too should the Court here, for the exact reasons persuasively and thoroughly explained by Magistrate Judge Brisbois.

---

[1] "Applying Federal Rule 15's vastly more liberal mere allegation pleading standard to the decision as to whether or not to allow the assertion of claims for punitive damages brought in federal court when the claims are premised on Minnesota state law causes of action would materially enlarge and modify the substantive rights of litigants attempting to assert claims for punitive damages brought in federal court as opposed to when the claims premised on Minnesota state law causes of action are brought in state court." *Id.*

The *Erie* doctrine was not modified by *Shady Grove*, and there is no basis to depart from this district's long-established rule applying the Minnesota gatekeeping statute to punitive damages allegations. Litigants like CHR have the substantive right under Minnesota law to be shielded from foundationless punitive damages allegations, unless and until the Plaintiff can make out a *prima facie* case for such damages on clear and convincing evidence. As the cases in this district recognize (set forth above), failure to enforce this substantive right will result not only in unfairness, but also disparate outcomes of the same claims, when those claims are brought in federal court.

On the other side of the ledger, Plaintiff fails to provide any explanation as to why the § 549.191 evidentiary standard should *not* apply. The cases cited by Plaintiff are inapposite. Plaintiff points first to *Shank v. Carleton College*, No. 16-CV-1154 (PJS/HB), 2018 WL 4961472 (D. Minn. Oct. 15, 2018), *aff'd*, 329 F.R.D. 610 (D. Minn. 2019)[2], arguing (incorrectly) that under *Shank*, the "only issue is whether Plaintiffs alleged a claim for which punitive damages can be recovered and not any other issue relevant to § 549.191." (ECF 49 at 11.) *Shank*, however, sheds little light on how Magistrate Judge Bowbeer concluded that Rule 15 provided the applicable standard, other than to note that "[s]ome recent decisions in this District have departed from past practice" of applying § 549.191. In fact, the only basis offered is a conclusory assertion

---

2 While Plaintiff's citation to *Shank* includes Judge Schiltz's initials, indicating that he was the District Judge presiding over this case, Judge Schiltz *did not* affirm the Report and Recommendation cited by Plaintiff. Rather, the case was transferred to District Judge Eric C. Tostrud, who affirmed the Report and Recommendation. *See* 329 F.R.D. 610 (D. Minn. 2019). Notably, the defendant in *Shank* did not object to Magistrate Judge Bowbeer's determination regarding § 549.191, thus, Judge Tostrud's affirmance did not analyze or approve of this determination.

that liberal federal pleading standards (wherein plausible allegations must be accepted as true) conflict with the evidentiary considerations required under § 549.191. *Id.*, 2018 WL 4961472 at *4. Magistrate Judge Bowbeer's decision appears not to consider that neither the Minnesota courts nor the Minnesota Legislature found that § 549.191 conflicts with materially identical *state* procedural rules, or the legion of cases from this district holding that § 549.191 is a substantive statute conferring substantive rights and applying the gatekeeping statute to this analysis. *See, e.g., Rilley*, 2018 WL 6920764 at *5; *Inline Packaging, LLC*, 2018 WL 9919941 at *5; *Coy v. No Limits Educ.*, No. 15-cv-93 (BRT), 2016 WL 7888047 (D. Minn. Apr. 1, 2016); *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008–18 (D. Minn. 2003); *Richardson v. Cardiac Surgical Assocs., P.A.*, No. 01-cv-542 (ADM/SRN), 2002 WL 737505 at *1 (D. Minn. Apr. 24, 2002); *Hammond v. Northland Counseling Ctr., Inc.*, No. 5-96-cv-353 (MJD/RLE), 1998 WL 315333 at *6-11 (D. Minn. Feb. 27, 1998); *Laffey v. Indep. Sch. Dist. No. 625*, 806 F. Supp. 1390, 1406 (D. Minn. 1992), *aff'd sub nom. Laffey v. St. Paul Tech. Vocational Inst.*, 994 F.2d 843 (8th Cir. 1993); *Sec. Sav. Bank*, 1990 WL 36142 at *1–5 (D. Minn. Mar. 22, 1990), *aff'd*, 739 F. Supp. 1342 (D. Minn. 1990); *Fournier,* 678 F. Supp. at 1422; *Kuehn,* 686 F. Supp. at 234-35.

Indeed, until recently, no federal court had found a conflict between the Minnesota gatekeeping statute and the Federal Rule, and the Eighth Circuit Court of Appeals never has. In fact, on several occasions, the Eighth Circuit implicitly approved the § 549.191 analysis of Minnesota federal courts. *See Bunker v. Meshbesher*, 147 F.3d 691, 696 (8th Cir. 1998) (affirming district court's denial of leave to amend based upon the application

of the Minnesota gatekeeping statute's "clear and convincing" standard of proof); *Gamma-10 Plastics, Inc.*, 32 F.3d at 1255 (affirming district court denial of leave to amend to add punitive damages, which applied § 549.191). On the other hand, the Eighth Circuit has never blessed the recent practice of ignoring the gatekeeper statute. This Court should not go out of its way to find a conflict where none exists.

Finally, Plaintiff points to *Benner v. St. Paul Pub. Sch., I.S.D. #625*, 380 F. Supp. 3d 869, 910 (D. Minn. 2019) for the *non sequitur* that § 549.191 has "never applied in this District when the claim arises under the court's supplemental jurisdiction." (ECF 49 at 11.) Then, in contradictory fashion, Plaintiff goes on to argue that its state law breach of fiduciary duty claims falls within the Court's diversity jurisdiction. (*Id*.) Neither of these statements is accurate.

Plaintiff's claim that the *Benner* court "observed" that § 549.191 has "never applied in this District when the claim arises under the court's supplemental jurisdiction," is false. The *Benner* court made no such sweeping observation, nor is it true as a general matter. A number of courts in this district have applied § 549.191 to Minnesota state law claims brought in federal court based upon both diversity and supplemental jurisdiction. *See, e.g.*, *Inline Packaging, LLC*, 2018 WL 9919941 at *1 (applying § 549.191 to analyze motion to add punitive damages allegations to Minnesota-law-based antitrust and tort claims, over which the court exercised supplemental jurisdiction in addition to claims brought under Article 2 of the Sherman Act); *Ulrich*, 848 F. Supp. at 866 (analyzing motion to add punitive damages allegations to her Minnesota Human Rights Act and tort

claims under § 549.191, over which the court exercised supplemental jurisdiction in addition to 42 U.S.C. § 1983 and Title VII claims).  As the court in *Ulrich* explained:

> As we have noted elsewhere, our jurisdiction is not premised upon diversity of citizenship but, rather, upon our Federal question jurisdiction.  In a strict sense, when one chooses to litigate a Federal civil rights claim in the Federal Courts, the potentially fractious interests of forum shopping are negligible.  ***Nevertheless, we find no persuasive basis to suggest that State claims, which have been joined in a Federal question Complaint, should be exempted from the dictates of Section 549.191, when similar claims, presented to the Court under the aegis of our diversity jurisdiction would not be similarly excepted.***  Thus, we conclude that the prerequisites of Section 549.191 are equally applicable to State law causes of action which are litigated in the Federal Courts of Minnesota, irrespective of whether the Court's jurisdiction is invoked by the diversity of the parties citizenship or by the tenets of this Court's supplemental jurisdiction.

*Ulrich*, 848 F. Supp. 867 n.5 (emphasis added).

The analysis from the *Ulrich* court rings true still.  There is no meaningful distinction between a Minnesota state law claim asserted in federal court on the basis of diversity jurisdiction and that same Minnesota state law claim asserted in federal court on the basis of supplemental jurisdiction.  And neither the *Benner* court, nor the Plaintiff here make any attempt to explain why such a distinction would impact § 549.191's application.

The Court should thus reject Plaintiff's conclusory analysis in support of its inflammatory punitive damages allegations, and apply the Minnesota gatekeeping statute as courts in this district have done for more than thirty years.  Failure to put Plaintiff to its burden would also be patently unfair to CHR, gifting unwarranted leverage to Plaintiff to

gin up further interest in its class action lawsuit and attempt to apply pressure to CHR through the press.[3] Until Plaintiff can make an ***evidence-based*** showing that it is entitled to add punitive damages allegations, which it has failed to do here, CHR requests that the Court preserve the status quo and deny Plaintiff's Motion with regard to the inclusion of punitive damages.

## II. Plaintiff Fails to Make a *Prima Facie* Showing that Punitive Damages Are Appropriate

Applying Minn. Stat. §§ 549.191 and 549.20, here, Plaintiff's failure to support its Motion with admissible evidence is fatal. The Minnesota gatekeeping statute requires more than mere recitation of pleadings. Indeed, the plaintiff must make a *prima facie* showing that clear and convincing evidence exists and that the acts of the defendant show

---

3 Indeed, CHR is aware of at least one instance in which Plaintiff's counsel may have brought a pleading from this matter to a convention of melon growers in an attempt to solicit additional Plaintiffs to join this litigation. (*Moore* ECF 39 at PDF Pages 12-13, CHR Letter to Plaintiffs' Counsel, dated March 13, 2020.) Moreover, Plaintiff's counsel have already made misrepresentations and accused CHR of criminal conduct in the press:

> This multibillion dollar company — we know through their internal memos — have deliberately sought to steal money from the most vulnerable segment of society — our backbone. [Farmers] are the salt of the earth — as American as you can get," Thomasson said. "And that [C.H. Robinson] would steal from them is beyond me. I don't think there's any class of person that Robinson is not willing to deceive or take money from in the name of profit.

https://www.tpr.org/post/farmers-seek-more-1-billion-global-logistics-company-alleged-freight-topping (last visited September 3, 2020). There can only be one purpose for libelous (per se) statements such as this by Plaintiff's counsel. That is, to apply pressure through the press in an improper attempt to gain leverage over CHR. Without question, should the Court grant Plaintiff's Motion and inject punitive damages into a groundless breach of contract action, Plaintiff and its counsel will undoubtedly attempt the same improper tactic once again.

deliberate disregard for the rights and safety of others. Minn. Stat. §§ 549.191 and 549.20. Proof is clear and convincing if it is sufficient for a jury to find a high probability of such deliberate disregard. *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1036 (D. Minn. 1998). "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" *Ulrich*, 848 F. Supp. at 868 (quoting *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978)).

"Ultimately, the Court's independent search for clear and convincing, *prima facie* evidence, that the defendant acted with a deliberate disregard for the rights or safety of others, requires the Court to do more than 'rubber stamp' the allegations in the Motion papers." *Berczyk*, 291 F. Supp. 2d at 1008-09. Rather, "[t]he Court must independently ascertain whether there exists prima facie evidence that the defendant acted with a deliberate disregard of the rights or safety of others." *Greer*, 2016 WL 6892109 at *7 (*citing Ulrich*, 848 F. Supp. at 868-69; *Berczyk*, 291 F. Supp. 2d at 1008-09). "Quite plainly, a 'prima facie case,' established by 'clear and convincing' evidence, requires evidence that is both competent, and probative, that is, the evidence must be admissible." *Id.* at 1010.

While CHR acknowledges that Minnesota law recognizes that under certain circumstances punitive damages are potentially recoverable under a breach of fiduciary duty theory;[4] Plaintiff here has failed to make its *prima facie* case that CHR's alleged breach (of an alleged fiduciary duty) is sufficient to warrant the availability of such

---

[4] To be clear, and to reiterate the position that CHR has taken, CHR intends to seek summary judgment regarding the absence of a fiduciary duty owed by CHR.

extraordinary damages here. Indeed, Plaintiff has proffered **no** evidence, let alone "clear and convincing evidence," that CHR's supposed actions showed a "deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20; *see also Berczyk*, 291 F. Supp. 2d at 1009 (finding that § 549.191 "impose[d] a mandatory obligation, on a party moving to plead punitive damages, to accompany its Motion with one or more Affidavits."). Instead, Plaintiff's motion rests entirely upon its own Complaint's unsubstantiated allegations and argument. *See Moldex Metric, Inc. v. 3M Co.*, No. CV 14-1821 (JNE/FLN), 2015 WL 9861796 at *3 (D. Minn. Sept. 4, 2015) ("It is well-established, however, that mere allegations in a complaint are not admissible evidence and are therefore insufficient to meet its burden under Section 549.191.") (citing *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 230 (Minn. 2014) ("Indeed, courts have long held that mere allegations in a complaint are not evidence.")). For this reason alone, Plaintiff's Motion must fail.

Courts in this district have consistently rejected the addition of punitive damages allegations—even when, unlike here, evidence is actually proffered—when the evidence falls short of the Plaintiff's burden. In *Moldex Metric, Inc.*, for example, the court found that a declaration and two emails attached to plaintiff's motion to add punitive damages allegations failed to meet the §§ 549.191 and 549.20 standard. 2015 WL 9861796 at *3. Moldex sued 3M for malicious prosecution, among other theories, after Moldex successfully defeated a patent infringement lawsuit filed against it by 3M. *Id*. at *1. In seeking leave to add punitive damages to its malicious prosecution claim, Moldex attached two internal 3M emails, but otherwise largely cited "directly to the Complaint

itself without further evidentiary support." *Id*. at *3. The court reasoned that mere allegations were insufficient for Moldex to meet its burden, and further that the emails failed to show that 3M decided to proceed with its patent infringement lawsuit despite knowledge that it was baseless, in deliberate disregard of Moldex's rights. *Id*. at *3. Because of the dearth of evidence presented by Moldex showing that 3M acted with "deliberate disregard for the rights or safety of others," the court denied Moldex's motion to add punitive damages allegations. *Id*.; *see also Greer*, 2016 WL 6892109 at *8 (finding that none of the declarations provided by plaintiff demonstrated clear and convincing evidence that defendant knew of or intentionally disregarded facts that create a high probability of injury to the rights or safety of others).

Plaintiff here does not even go so far as the insufficient proffer in *Moldex*. Rather, Plaintiff provides no evidence whatsoever that CHR acted with "deliberate disregard" to Plaintiff's rights. *See Cherrington v. Wild Noodles Franchise Co., LLC*, No. CV 04-4572 (MJD-JJG), 2006 WL 8443100 at *4 (D. Minn. Apr. 28, 2006) (rejecting plaintiffs' motion to add punitive damages to their breach of fiduciary duty claim because they failed to offer any evidence to make their *prima facie* showing). Indeed, like in *Moldex*, Plaintiff here attempts to support its Motion by citations to the (as-yet unfiled) First Amended Complaint. (ECF 49 at 12, 15 ("Based on the facts alleged in the FAC, Plaintiffs have alleged that Defendants breached fiduciary duties which they owed to each farmer for which they may recover punitive damages.") These citations, on two pages of Plaintiff's memorandum, are the only "fact" citations in the entire memorandum in support. And of course, Plaintiff's allegations are neither facts nor evidence. As in

*Moldex*, this Court must reject Plaintiff's motion as unsupported by any evidence, let alone competent, "clear and convincing" evidence tending to show that CHR acted with a "deliberate disregard for the rights or safety of [Plaintiff]." Minn. Stat. § 549.20; *Moldex*, 2015 WL 9861796 at *3.

Plaintiff fails to engage in any analysis concerning its burden to proffer clear and convincing evidence in support of its request to add punitive damages allegations. Rather, Plaintiff repeats its refrain that its *allegations* are sufficient to show that an agency relationship existed, which, according to Plaintiff, gave rise to a *fiduciary* relationship. (ECF 49 at 12-13.) Plaintiff then argues that CHR breached this fiduciary duty based solely upon Plaintiff's unsubstantiated allegations, which, according to Plaintiff, entitle it (and the entire putative class) to add punitive damages allegations. (*Id.* at 14-15). Plaintiff's supposition is premised on an incorrect reading of Minnesota law.

In particular, Plaintiff misreads *Jurek v. Thompson*, 308 Minn. 191, 199, 241 N.W.2d 788, 791 (1976), upon which it bases its assertion that CHR owes it a fiduciary duty. Indeed, Plaintiff has the fiduciary relationship analysis precisely backwards— likely because the positions in *Jurek* are the opposite of the instant case. In *Jurek*, the plaintiff grain trucker and investor sued the defendant farmer for failing to provide the contracted for volume of corn. *Id.* at 194-195. Among other theories, the plaintiff alleged that the defendant farmer was its agent, and thus under their agreement owed the plaintiff a fiduciary duty in addition to contractual duties. *Id.* at 195-96. The Minnesota Supreme Court held that an agency relationship did ***not*** exist between the parties. *Id.* at 198. Citing the Restatement (Second) of Agency, the court reasoned "the critical element

of defendant's right of control over plaintiff in the sale of the corn is totally lacking." *Id*. The court went on to state, "[o]nce the contracts were formed, defendant had no control over any phase of plaintiff's operations. Defendant merely surrendered the corn and was paid." Because the defendant farmer lacked control over the plaintiff's operations, no agency relationship existed. *Id*. at 199-200; *id.* at 198 ("Agency cannot be proved solely by the acts or declarations of the assumed agent—the will of the principal must be expressed or implied from the circumstances.").

Thus, under *Jurek*, for CHR to be an agent of Plaintiff (the putative principal, in this scenario), Plaintiff must be able to exert some control over CHR's operations. *Jurek*, 308 Minn. at 198-99 (("'The agency relation results if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which **the fiduciary is subject to the directions of the one on whose account he acts**. It is the element of *continuous subjection to the will of the principal* which distinguishes the agent from other fiduciaries and the agency agreement from other agreements.") (quoting Restatement, Agency 2d, s 1, Comment B) (italics in original, bold emphasis added)). Plaintiff does not and cannot allege any such control. Even a cursory review of the parties' agreement demonstrates that CHR, not Plaintiff, was granted almost complete control over the transactions between the two entities. (*E.g.*, ECF 1-2 at 11-19.) Under *Jurek*, CHR is not Plaintiff's agent or fiduciary, as contemplated by Minnesota law. And absent an agency or fiduciary relationship,

Plaintiff provides no basis to seek punitive damages.[5]   As a result, even without competent evidence in support of their Motion, Plaintiff's allegations and legal claims fail to establish plausible grounds for the Court to conclude the addition of punitive damages allegations is appropriate here.

Plaintiff has failed to present any evidence, or even persuasive argument or allegations, sufficient to warrant the addition of punitive damages—whether viewed under the Minnesota gatekeeping statute or some lesser standard advocated by Plaintiff. The Court should therefore deny Plaintiff's Motion for Leave to Amend its Complaint to add punitive damages allegations.

## III.    Plaintiff's Amendment Is Futile Under Rule 15

Even assuming that Rule 15 provides the applicable standard to decide Plaintiff's Motion, Plaintiff cannot satisfy this permissive standard, because its proposed amendment is futile.   Rule 15 provides that leave to amend should be "freely given" unless it can be shown that the proposed amendments are a product of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."   *Foman*, 371 U.S. at 182 (1962); *Becker v. Univ. of Neb.*, 191 F.3d 904, 907–908 (8th Cir. 1999).   An amendment is considered futile under Rule 15(a) if the claim "would not withstand a Motion to

---

5  In fact *Minnesota Timber Producers Associations, Inc. v. Am. Mut. Ins. Co. of Bos.*, cited by Plaintiff, actually *reversed the award of punitive damages and held that the plaintiff failed to demonstrate a fiduciary relationship* because, just as here, the parties dealt with each on an arm's length relationship and there was no evidence that a fiduciary relationship was intended.   766 F.2d 1261, 1268 (8th Cir. 1985).

Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1105 (D. Minn. 1998); *see also Cornelia I. Cromwell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008) (evaluating "futility" of asserted claims under Fed. R. Civ. P. 12(b)(6) standard).

Here the majority of Plaintiff's proposed amendments simply restate allegations already made in its existing Complaint, but which are now re-characterized as supposedly showing CHR's purported breach of an alleged fiduciary duty, with "deliberate disregard for the rights of Plaintiffs." (*Compare*, *e.g.*, ECF 52 ¶ 221 *with* ECF 1 ¶¶ 95 & 174.) As explained in § II, *supra*, Plaintiff's fiduciary duty claim is based upon a faulty premise— that is, under Minnesota law, no agency relationship existed between Plaintiff and CHR. Indeed, because Plaintiff's proposed amendments fail to allege that Plaintiff can or did assert any control over CHR's operations, CHR is not Plaintiff's agent under Minnesota law and Plaintiff's proposed amendments are futile. *See Jurek*, 308 Minn. at 198.

In addition to restating and re-characterizing with conclusory assertions its existing allegations regarding CHR's supposed breach of fiduciary duty, Plaintiff also attempts to bolster its punitive damages allegations by baldly accusing CHR of criminal mail and wire fraud. (*See* ECF 52 ¶ 225.) In particular, Plaintiff alleges:

> CHR sent Plaintiffs its false sales reports and liquidations by means of email or the US Postal Service. Plaintiffs' payments were sent to them through interstate banking channels. CHR engaged in a pattern conduct (sic) by transmission of false liquidations which would qualify as wire and mail fraud by means of instrumentalities of interstate commerce. Thus, the potential criminal penalties under 18 U.S.C. §§ 1341 and 1343 for mail fraud and wire fraud should be considered in any assessment of punitive damages.

(*Id.*)  Plaintiff's attempt to bootstrap its specious accusation of criminal fraud to its request for punitive damages is not only improper under Rule 11[6], but also fails as a matter of law under Rule 9(b).

The Eighth Circuit has recognized that Rule 9(b) applies to allegations of civil mail fraud and wire fraud in the context of a civil RICO claim.  *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.,* 48 F.3d 1066, 1069 (8th Cir. 1995).  The "circumstances of fraud," as the term is used in Rule 9(b), "include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."  *Id.* at 1069 (citing 18 U.S.C. §§ 1341, 1343 and holding that Rule 9(b)'s heightened pleading requirement applies to allegations of mail and wire fraud used as predicate acts for a RICO claim).  Thus, litigants pleading fraud violations must allege the time, place, and content of all false representations.  *Lange v. Hocker*, 940 F.2d 359, 362 (8th Cir. 1991) (quoting *Lally v. Crawford County Trust & Savings Bank*, 863 F.2d 612, 613 (8th Cir. 1988)).

Plaintiff provides none of the requisite detail—let alone how it expects to be able to prove these allegations on behalf of a putative class.  And what is more, under Plaintiff's theory, virtually any commercial breach of contract case could become a

---

6  If the Court grants Plaintiff leave to file a proposed amended complaint that includes baseless accusations of criminal mail and wire fraud, CHR intends to pursue remedies under Rule 11, and will consider other available legal recourse.  *See Disability Support All. v. CCRE, LLC*, No. CV 15-3713 (MJD/DTS), 2017 WL 1330310 at *6 (D. Minn. Apr. 11, 2017) (granting defendant's motion for sanctions under Rule 11 based upon plaintiff's filing of a pleading including foundationless allegations of criminal wrongdoing).

criminal mail or wire fraud case if any business related thereto was conducted over email. *See, e.g.*, *New York State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 299-300 (E.D.N.Y. 2015) ("A breach of contract, without more, does not amount to actionable wire fraud.")

Rule 9's heightened pleading requirement is equally applicable to pleading fraud in the context of Rule 15's futility analysis. *See Edney Distrib. Co., Inc. v. Buhler Trading, Inc.*, No. 10-CV-04929 (DWF/SER), 2011 WL 13136004 at *3 (D. Minn. Sept. 27, 2011) (denying motion to amend complaint to add misrepresentation claims as futile because the proposed allegations failed to comply with Rule 9(b)); *Ikeri v. Sallie Mae, Inc.*, No. CV 13-1943 (DSD/JSM), 2014 WL 12599634 at *11 (D. Minn. Feb. 5, 2014) (denying motion to amend complaint, under Rule 15, to add fraud claims where plaintiff failed to allege the "who, what, where, when, and how" of the alleged fraudulent representations as required by Rule 9(b)). Plaintiff's allegations of wire and mail fraud lack the requisite detail to satisfy Rule 9(b), and are therefore futile.

In *McMaster v. State of Minn.*, for example, the plaintiffs' complaint alleged that defendants violated RICO because "through a pattern of deception and the use of the mails, the wires, and through interstate commerce, [they] have developed an enterprise for the purpose of selling goods in interstate commerce produced by persons who are paid unlawful wages." 819 F. Supp. 1429, 1442 (D. Minn. 1993), *aff'd,* 30 F.3d 976 (8th Cir. 1994). Dismissing plaintiffs' claims regarding mail and wire fraud, the court found that their allegations were "simply too vague to meet the particularity requirements of Rule 9(b)." *Id* at 1443. The Court reasoned that plaintiffs' bald assertion that the

defendants used the mails and wires to further their allegedly fraudulent scheme, without details regarding the alleged violation, failed to comply with the specificity requirements of Rule 9(b). *Id.*

Much like the plaintiffs in *McMaster* attempted to allege mail and wire fraud allegations as predicate acts for RICO claims, Plaintiff here is attempting to use mail and wire fraud allegations to support its claim for punitive damages. As in *McMaster*, Plaintiff's mail and wire fraud allegations are vague and conclusory. Neither case alleges any detail or specificity concerning the purported illicit scheme. Plaintiff alleges only that CHR supposedly "engaged in a pattern conduct (sic) by transmission of false liquidations which would qualify as wire and mail fraud by means of instrumentalities of interstate commerce." (ECF 52 ¶ 225; *see also Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428-29 (8th Cir. 2009) (affirming dismissal of RICO claim for lack of particularity where plaintiff generally alleged that defendant's racketeering "involved the use of the interstate telephone and the U.S. mails on a number of occasions.").) As in *McMaster*, Plaintiff's mail and wire fraud allegations fail under Rule 9(b), and Plaintiff's proposed amendment to add such claims is futile.

Apart from Plaintiff's failure to satisfy Rule 9, even under the lenient Rule 15 standard, Plaintiff's request to add punitive damages allegations must fail. The only claim for which Plaintiff could possibly recover punitive damages, breach of fiduciary duty, is on shaky ground at best, because it is founded upon a fundamental misapplication of Minnesota law of agency. Based on Plaintiff's own allegations, Plaintiff exerted no control over CHR's operations sufficient to make CHR Plaintiff's agent or fiduciary.

Thus, Plaintiff's attempt to base their punitive damages allegations on such a specious purported relationship is futile. Perhaps recognizing the weakness of its fiduciary duty claim, Plaintiff attempts to bolster its allegations for punitive damages by trying to sneak allegations of criminal mail and wire fraud through the backdoor. These attempts must also fail. Plaintiff's conclusory allegations of criminal fraud fall well short of the heightened pleading requirements of Rule 9(b), and would not survive dismissal. As a result, Plaintiff's attempt to amend its Complaint to add punitive damages allegations is futile and must be dismissed.

## CONCLUSION

At its core, this is a run-of-the-mill breach of contract action between two sophisticated, private parties with equal bargaining power, whose relationship, rights and duties were defined as a result of arm's-length negotiations. Plaintiff's Motion for leave to file its First Amended Class Action Complaint fails to adequately explain why the Court should not apply the Minnesota gatekeeping statute. Indeed, Plaintiff's proposed allegations concerning punitive damages are the exact reason why the statute exists. Plaintiff has failed to provide any evidence that CHR has engaged in criminal conduct, yet it casually alleges that CHR defrauded it through the mail and over wire. Plaintiff also fails to satisfy Rule 15 with its frivolous and futile allegations. Allowing Plaintiff to proceed with such allegations is a bell that cannot be un-rung and will no doubt fundamentally change the nature of this class action lawsuit.

Thus, for the reasons stated herein, this Court must deny Plaintiff's Motion and bar it from filing its First Amended Class Complaint to add punitive damages.


Dated: September 8, 2020                        Respectfully Submitted,

                                                **FAFINSKI MARK & JOHNSON, P.A.**


                                                s/ Patrick J. Rooney
                                                Patrick J. Rooney (#0198274)
                                                Bradley R. Hutter (#0396531)
                                                Adina R. Florea (#0395026)
                                                Flagship Corporate Center
                                                775 Prairie Center Drive, Suite 400
                                                Eden Prairie, MN  55344
                                                (952) 995-9500
                                                *patrick.rooney@fmjlaw.com*
                                                *bradley.hutter@fmjlaw.com*
                                                *adina.florea@fmjlaw.com*

                                                Peter Wozniak (*admitted pro hac vice*)
                                                Mark Wallin (#0401450)
                                                Barnes & Thornburg LLP
                                                One North Wacker Drive, Suite 4400
                                                Chicago, IL 60606-2833
                                                *Peter.Wozniak@btlaw.com*
                                                *MWallin@btlaw.com*

                                                *Attorneys for Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company*