# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JMR FARMS, INC, *et al.,* | ) | |
| Individually and on behalf of | ) | |
| all others similarly situated, | ) | Case No.: 20-cv-879 (PJS/HB) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| C.H. ROBINSON WORLDWIDE, | ) | |
| INC. *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

Introduction ............................................................................................................. 1

Statement of Undisputed Facts .............................................................................. 4

Legal Standard ........................................................................................................ 6

Argument ................................................................................................................. 7

   I.  CHR's Undisclosed Freight Topping Charges Are Disallowed Under PACA
      Without Proving Actual Damages ................................................................... 7

      A.  PACA's Remedial System ........................................................................ 8

      B. PACA Allows Plaintiffs to Recover Damages Without Showing They
          Suffered Actual Harm ............................................................................. 9

   II. CHR Must Forfeit Its Commission and Freight Profit for Breaching its
      Fiduciary Duty ............................................................................................. 14

      A. Fee Forfeiture is an Equitable Remedy Available Without Proof of Actual
          Harm ........................................................................................................ 16

  III. Plaintiffs' Remedies Are Calculated by the Amount of CHR's Commissions
      and Freight Markup ...................................................................................... 20

      A.  Calculation of Fee Forfeiture ................................................................ 20

      B.  Calculating Disgorgement of Freight Markup ..................................... 21

      C.  Quantifying the Amount of Fee Forfeiture and Freight Topping ............ 22

Conclusion ............................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*A.J. Conroy, Inc. v. Weyl-Zuckerman & Co.*, 39 F. Supp. 784 (N.D. Cal. 1941) ..........9

*Bloomquist v. Wisdom Develop. Group, LLC*, No. A08-0367, 2009 WL 67059
(Minn. App. Jan. 13, 2009) (unpublished) ...................................................................22

*Brcka v. Falcon Elec. Corp.*, C8-00-1434, 2001 WL 641524
(Minn. App. June 12, 2001) (unpublished)...........................................................22, 23

*Blum v. Thompson*, 901 N.W.2d 203 (Minn. App. 2017) ...........................................22

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) .................................................................17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).................................................................6

*Com. Assocs., Inc. v. Work Connection, Inc.*,
712 N.W.2d 772 (Minn. App. 2006) ........................................................16, 19, 20, 21

*Domain Assets, LLC v. Petters Group Worldwide, LLC*, No. 06-4379 (PAM/JSM),
2008 WL 11347731 (D. Minn. Apr. 4, 2008) ...............................................................18

*Frank v. Bloom*, 634 F.2d 1245 (10th Cir. 1980)...........................................................19

*Furlong v. Shalala*, 156 F.3d 384 (2d Cir. 1998)...........................................................13

*George Steinberg and Son, Inc. v. Butz*, 491 F.2d 988 (2d Cir. 1974)............................1

*Gilchrist v. Perl*, 387 N.W.2d 412 (Minn. 1986) ........................................16, 19, 20, 23

*Great Lakes Produce, LLC v. Bailey*, 2008 WL 4534116
(W.D. Mich. Sept. 29, 2008).............................................................................................9

*HAAC Chile, S.A. v. Bland Farms, LLC*, No. 606CV086, 2008 WL 3925285
(S.D. Ga. Aug. 26, 2008)...................................................................................9

*Harry Klein Produce Corp. v. U.S.D.A.*, 831 F.2d 403 (2d Cir. 1987) ...........................8

*Hearing Assocs., Inc. v. Downs*, A16-1317, 2017 WL 2414852
(Minn. App. June 5, 2017) (unpublished)....................................................19

*Hendry v. Pelland*, 73 F.3d 397 (D.C. Cir. 1996)...........................................19

*Huber v. Taylor*, 469 F.3d 67 (3rd Cir. 2006)..................................................19

*In re Estate of Lee*, 9 N.W. 2d 245 (1943).......................................................15

*In re Lombardo Fruit and Produce Co.*, 12 F.3d 806 (8th Cir. 1993).......................1, 10

*Louisville & N.R. Co. v. Sloss-Sheffield Steel & Iron Co.*, 269 U.S. 217 (1925) ...........11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................6

*McGrath v. MICO, Inc.*, Nos. A11-1087, A11-1109, A12-0093,
2012 WL 6097116 (Minn. App. Dec. 10, 2012) (unpublished) .................................14

*Perl v. St. Paul Fire and Marine Ins. Co.*,
345 N.W.2d 209 (Minn. 1984) ...........................................15, 16, 18, 19, 21

*Olson v. Pettibone*, 210 N.W. 149, 150 (Minn. 1926) ....................................20

*R.E.R. v. J.G.*, 552 N.W.2d 27 (Minn. App. 1996) .................................15, 22

*Ricci v. DeStefano*, 557 U.S. 557 (2009) ........................................................6

*Rice v. Perl* 320 N.W.2d 407 (Minn. 1982) ..............................................17, 20

*S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*,
702 F. Appx 874 (11th Cir. 2017) ................................................................13

*Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531 (1918) .................11

*Tom Lange Co., Inc., v. Anic, Inc.*, PACA Dkt. R-93-81 ................................................12

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) .......................................6

*United Potato Co., Inc. v. Burghard & Sons, Inc.*,
18 F. Supp. 2d 894 (N.D. Ill. 1998) ................................................................................9

*Woods v. DaimlerChrysler Corp.*, 409 F.3d 984 (8th Cir. 2005) .....................................6

*Workers' Comp. Reinsurance Ass'n v. Wells Fargo*, No. A11-1260,
2012 WL 1253094 (Minn. App. 2012) (unpublished) ................................................21

## Rules and Statutes

7 U.S.C. § 499 ..................................................................................... passim

7 C.F.R. § 46.2 ............................................................................................8

7 C.F.R. § 46.29 ..................................................................................2, 8, 10

7 CFR § 46.32 ...........................................................................................13

Fed. R. Civ. P. 56 .......................................................................................6

Minn. Stat. § 549.20 .................................................................................23

## Other Authority

Restatement (Second) of Agency.................................................................19

Restatement (Second) of Torts (1977) ...........................................15, 19, 22

Restatement (Third) of the Law Governing Lawyers ...............................19

## INTRODUCTION

Plaintiffs allege violations of Section 2 of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a ("PACA") and breach of fiduciary duty under Minnesota law. After a hearing on Plaintiffs' motion for class certification, the Court requested dispositive motions on whether proof of actual harm is a required element of each claim, and if not, what is the measure of relief sought. For purposes of this motion, the parties assume that CHR breached its PACA and fiduciary obligations. (*See* Dkts. 137, 142).

### *The PACA Claim*

PACA was designed to "protect small farmers and growers from the sharp practices of … unscrupulous brokers in perishable commodities." *See, e.g., In re Lombardo Fruit and Produce Co.*, 12 F.3d 806, 808 (8th Cir. 1993). For many middlemen, the leverage they held over growers due to the perishable nature of their products became an irresistible temptation to self-deal, including by marking up the price of produce transportation. *See, e.g., George Steinberg & Son, Inc. v. Butz*, 491 F.2d 988, 990 (2d Cir. 1974) (PACA enacted to "regulat[e] the interstate business of shipping and handling perishable agricultural commodities such as fresh fruits and vegetables.").

Congress sought to level the playing field by requiring these middlemen to provide growers with true and correct accounts of their commodity transactions. 7 U.S.C. § 499b(4); 7 C.F.R. § 46.29(a). Among the middlemen required to abide by these requirements are "commission merchants" who sell growers' produce on consignment and frequently arrange or provide transportation of produce from farm to market. *See id.*

When commission merchants truly and correctly account to growers, growers can know whether they are being cheated and seek redress. But when commission merchants do not truly and correctly account to growers, commission merchants violate their PACA obligations and deprive growers of the evidence necessary to prove they are being cheated. Under PACA, any expenses charged against the shipment by the commission merchant that are not properly accounted for are disallowed.

PACA provides disallowance as an alternative remedy to the compensatory damages that were already available to growers suing their agents under common law. Thus, in the context of an unlawful practice under Section 2 of PACA, the law presumes the fact of injury and declares that charges that are not agreed to and disclosed are simply disallowed without affirmative proof of harm.

2

*The Breach of Fiduciary Duty Claim*

When growers retained CHR as their agent to sell their produce, CHR assumed a fiduciary duty (assumed as true for purposes of this motion, Dkt. 142). Plaintiffs contend that CHR breached that duty by adopting shipping practices that placed its interests in conflict with those of its grower principals (also assumed as true for purposes of this motion, Dkt. 142). When CHR added a freight topping charge to the cost of transportation, it cut into the "FOB price," which lowered the amount reported to and owed to Plaintiffs. Because CHR kept every penny added to the freight charge but received only the commission percentage on the FOB price, CHR was incentivized to maximize the transportation component of the Delivered Sale price, and thereby its own profits, all at the expense of growers.

The aggregate impact of this scheme is huge: a single digit percentage increase to CHR at the expense of growers quickly yields millions of dollars in skimmed sales proceeds. CHR's secret profits from its conflict of interest – an abuse of its fiduciary position – requires that CHR disgorge its commissions and freight markup charges. Accordingly, Plaintiffs seek a judgment requiring CHR to forfeit its commissions because a faithless fiduciary forfeits its fee by violating its fiduciary duty and a judgment requiring CHR to forfeit its freight markup.

## STATEMENT OF UNDISPUTED FACTS

Defendants C.H. Robinson Company and C.H. Robinson Company, Inc. are subsidiaries of defendant C.H. Robinson Worldwide, Inc. (collectively "CHR"), and all are headquartered in Minnesota. (Dkts. 67, 72, ¶¶ 23-26, 29). CHR's produce operations include representing growers in selling their produce to retailers who sell produce to consumers ("agency business"), sourcing produce for its customers ("sourcing"), and arranging transportation of growers' produce to its customers ("logistics"). (Dkts. 67, 72, ¶ 63; *see also* Ex. 1).

Plaintiffs Bonne Idee Produce, LLC and Bowles Farming Company, Inc. grow perishable commodities as defined under PACA and each appointed CHR as their sales agent.[1] (*See* Exs. 2-6). In this role, CHR received possession (but not title) of their produce on consignment and agreed to sell it in exchange for a commission, typically eight to ten percent. (*See id.*; Ex. 7, at 172:16-173:12; Ex. 8, at 00643428). CHR's commission was computed as a percentage of the Free on Board ("FOB") sales price, which is the "total sale amount to the customer less the cost to sell…." (Ex. 9, at Rog. 13).[2]

---

[1] PACA defines a "perishable agricultural commodity" as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A).

[2] Transactions in which CHR did not arrange transportation do not involve freight markup and are not at issue here.

Here, CHR sells Plaintiffs' produce in a "Delivered Sale" at a price that includes the cost of both goods and shipping, with CHR arranging for the produce to be delivered to the customer at the customer's expense. (Ex. 10, at 73:1-74:11, 76:1-77:7). In doing so, CHR seeks to profit from arranging for the produce to be delivered on top of the commission it earns from the sale of the produce. (Ex. 11, at Rog. 20). To prepare a Delivered Sale price quote, CHR prepared an estimated price for the freight and then "combine[d] it with the FOB price that [they] feel is reflective of the market." (Ex. 10 at 73:15-75:5). When CHR paid the carrier less than the quoted amount, CHR profited. (Ex. 10 at 77:13-19).

CHR's accounting of this transaction to the Plaintiffs disclosed only the FOB price; it did not disclose the freight markup or the total sales proceeds. (*See, e.g.,* Ex. 12; Ex. 13, at CHR 01546656). CHR sets the amount of its freight profit. (*See, e.g.,* Exs. 14, 15, and 16, CHR 01338610 (discussing how much profit to quote for a delivered sale); CHR 01243863 (discussing how to allocate freight between sourcing, Robinson Fresh, and transportation, C.H. Robinson); CHR 01206647 (discussing how to allocate freight in a commissioned sale and questioning if "shift[ing] freight money around to get the fob on a commissioned product to the agreed upon fob" was "a new way we are sticking it to the grower for freight").

## LEGAL STANDARD

Summary judgment is proper when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead the trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

A<small>RGUMENT</small>

**I.  CHR's Undisclosed Freight Topping Charges Are Disallowed Under PACA Without Proving Actual Damages**

The Court asked the parties to address the following questions:

1.  If CHR violated section 2 of PACA, may plaintiffs recover damages for that PACA violation without proving that they suffered actual harm?

2.  If plaintiffs can recover for the PACA violation without proving actual harm, how will their damages be calculated?

Crucially, the Court did not ask whether Plaintiffs may recover damages without *suffering* actual harm, *i.e.*, injury-in-fact. Rather, the Court asked whether Plaintiffs may recover damages without affirmatively *proving* that they suffered actual harm. The Court identified the heart of the issue: whether PACA effects a burden-shifting scheme that disallows, i.e., returns to Plaintiffs, unaccounted for charges unless CHR can substantiate those charges. In the context of this case, CHR deprived Plaintiffs of any basis to know of their injury-in-fact by failing truly and correctly to account for the transportation charge. While Plaintiffs do not dispute that CHR can substantiate the transportation charge paid to the carrier, it cannot substantiate the freight markup to which Plaintiffs never agreed.

## A. PACA's Remedial System

"PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility." *Harry Klein Produce Corp. v. U.S.D.A.*, 831 F.2d 403, 405 (2d Cir. 1987). "It is an **intentionally rigorous law** whose primary purpose is to exercise control over an industry which is highly competitive, and in which **the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous**." *Id.* (internal citations omitted) (emphases added).

To further these purposes, PACA makes it unlawful for a commission merchant[3] "to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had…." 7 U.S.C. § 499b(4). The accounting must include "[c]omplete and detailed records" and "an accurate and itemized report of sales and expenses charged against the shipment." 7 C.F.R. § 46.29(a). "*Charges which cannot be supported by proper evidence in the records of the commission merchant or joint account partner shall not be deducted*." *Id.* (emphasis added).

---

[3] *See* 7 U.S.C. § 499a(b)(5) (defining a "commission merchant" as "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another."); *accord* 7 C.F.R. § 46.2.

A commission merchant who violates this accounting duty "is liable to the person or persons injured thereby for the full amount of damages… sustained in consequence of such violation." 7 U.S.C. § 499e(a). PACA's remedies are "in addition to" common law remedies. *Id.* at § 499e(b); *see also A.J. Conroy, Inc. v. Weyl-Zuckerman & Co.*, 39 F. Supp. 784, 787 n.2 (N.D. Cal. 1941) (PACA "gives an additional remedy to growers"); *United Potato Co., Inc. v. Burghard & Sons, Inc.*, 18 F. Supp. 2d 894, 899 (N.D. Ill. 1998) (rejecting statute of frauds defense because PACA was designed to provide a remedy where state law does not); *HAAC Chile, S.A. v. Bland Farms, LLC*, No. 606CV086, 2008 WL 3925285 at *11 (S.D. Ga. Aug. 26, 2008) ("PACA merely provides a remedy in addition to state law; it does not preempt it"); *Great Lakes Produce, LLC v. Bailey*, No. 1:08-cv-463, 2008 WL 4534116, at *3 (W.D. Mich. Sept. 29, 2008) (PACA "is cumulative" to common law remedies).

### B. PACA Allows Plaintiffs to Recover Damages Without Showing They Suffered Actual Harm

PACA makes it illegal for commission merchants "to fail or refuse truly and correctly to account" to growers for the expenses charged to them. 7 U.S.C. § 499b(4). PACA makes violators "liable to the person or persons injured thereby for the full amount of damages." *Id.* at § 499e(a). These words, given their most natural meaning, create a clear framework of prohibition and redress.

9

Because "PACA was designed to protect small farmers and growers from the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities," *In re Lombardo Fruit*, 12 F.3d at 808 (8th Cir. 1993), it is clear that sections 499b and 499e reflect Congress's intention to create a statutory scheme that presumes actionable misconduct by middlemen in certain scenarios, *i.e.*, when they violate § 499b. PACA does not define "the full amount of damages," but the implementing regulations specify that "[c]harges which cannot be supported by proper evidence in the records of the commission merchant . . . ***shall not** be deducted*." 7 C.F.R. § 46.29(a) (emphasis added). In other words, any charges for which CHR failed truly and correctly to account are by that very fact rendered entirely impermissible and must be awarded to growers as damages.

Therefore, Plaintiffs need not prove the counterfactual that they could have obtained a better deal if the freight expense and markup had been disclosed or if an independent, third-party freight broker had been obtained to secure transportation, but only that CHR failed truly and correctly to account for freight markup charges. Then, unless CHR can present "proper evidence" to substantiate these charges, it must return them to Plaintiffs as improper deductions.

The Supreme Court's interpretation of a corollary statute – roughly contemporaneous with the enactment of PACA – supports this analysis. *See Louisville & N.R. Co. v. Sloss-Sheffield Steel & Iron Co.*, 269 U.S. 217 (1925). The Interstate Commerce Act's ("ICA") damage provisions mirrors PACA. *Compare id.* at 232 (citing ICA section 8, carrier "shall be liable … for the full amount of damages sustained in consequence of any such violation of the provision of this act.") *with* 7 U.S.C. § 499a ("shall be liable … for the full amount of damages … sustained in consequence of such violation"). The Court noted, based on its prior interpretation of the ICA in *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918), that "recovery for excessive freight charges can be had under section 1 *without specific proof of pecuniary loss*, and that the measure of damages is the amount of the excess exacted." *Id.* at 238 (emphasis added).

The Supreme Court further noted that when goods were sold at a delivered rate, "excessive freight charge for delivery of the finished article affects him as directly as does a like charge upon his raw materials." *Id.* Thus, the plaintiff was entitled to recover the excess freight charges. *Id.* In other words, shortly before PACA was enacted, multiple Supreme Court opinions had interpreted the same statutory language to provide presumptive damages for excess freight charges.

The USDA, the agency tasked with implementing and enforcing PACA, has followed this burden-shifting framework in reparations proceedings between growers and commission merchants. In *Tom Lange Co., Inc., v. Anic, Inc.*, PACA Dkt. R-93-81 (attached as Ex. 17), for example, a PACA-licensed seller accepted responsibility for arranging shipping to a purchaser in an FOB transaction. In so doing, seller became purchaser's agent. But seller then refused to disclose the amount it had paid for shipping to purchaser. *See generally Anic* at 7–9. Because seller's refusal deprived purchaser of the ability to know whether seller was making a "secret profit" on shipping, the administrative law judge held that seller's conduct violated the purchaser's right to receive a true and correct account of the charges billed to it. *Id.* at 8–9. Accordingly, the ALJ held the measure of damages to be the entire amount invoiced for shipping. *Id.* at 9.

Importantly, the ALJ did not require the purchaser to prove this amount in damages or prove the purchaser could have obtained better terms. Instead, the fact that the seller did not truly and correctly account was alone held sufficient. *Id.* at 8. That is, when a PACA licensee violates § 499b(4) by failing truly and correctly to account for the amount actually paid to the transportation carrier, damages are presumed in the full amount of any freight markup.

The Eleventh Circuit similarly relied on PACA regulations in affirming, in part, an ALJ's damage award against a produce marketer. *S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 702 Fed. Appx 874 (11th Cir. 2017). The court cited 7 C.F.R. § 46.32(c), which prohibits an agent from passing on a second commission to the grower absent express permission of the grower and disallowed all of the second commissions charged by the marketer. *Id.* at 885. Despite striking down damages for sloppy accounting due to Plaintiff's failure to allege harm,[4] when it came to the non-disclosed charges against the shipment, the court *did not require* Plaintiff to show actual damages, i.e., that Plaintiff would have received better terms had the second commission been disclosed. *See id*. at 877–80; 884–85.[5]

Statute, regulation, Supreme Court precedent, and administrative rulings speak with one voice: damages for violation of this statutory duty may be proven without proof of actual harm. Here, the charges that CHR was not permitted to deduct must be returned unless CHR can rebut the presumption by showing that the charges were agreed to and can be substantiated with records.

---

[4] Defendants' deficient accounting consisted of failure to sequentially number sales tickets and deficient treatment of pooled losses. *Id*. at 877.

[5] While the decisions of an administrative law judge ("ALJ") are not binding on federal district courts, they are persuasive. *Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir. 1998).

## II. CHR Must Forfeit Its Commission and Freight Profit for Breaching its Fiduciary Duty

Plaintiffs contend CHR owes them a fiduciary duty when acting as a marketing agent selling their produce on a consignment basis in exchange for a commission. Plaintiffs claim CHR breached its fiduciary duty to them by negotiating a profit for itself while simultaneously negotiating the price of their produce. While the existence of the duty and the breach remain disputed issues, the parties agreed to brief the threshold issue bearing on class certification of whether, assuming CHR owes Plaintiffs a fiduciary duty and subsequently breached that duty, Plaintiffs may recover equitable remedies (here, forfeiture of fees and profits) without proof of actual harm. (*See* Dkt. 142).

Minnesota courts[6] recognize fiduciary duty claims as both legal and equitable. *See, e.g., McGrath v. MICO, Inc.,* Nos. A11-1087, A11-1109, A12-0093, 2012 WL 6097116 at *11 (Minn. App. Dec. 10, 2012) (unpublished) (where fiduciary duty claim presents as a legal claim, similar to a tort, legal damages are available and noting Minnesota has "referred to fiduciary-duty claims as equitable, other cases recognize a tort claim with the same elements as a negligence claim").

---

[6] The parties agree Minnesota law applies. (*See* Feb. 25, 2022 Tr. at 78:16-22).

Remedies for a breach of fiduciary duty may be equitable in nature. *See, e.g.,* *R.E.R. v. J.G.*, 552 N.W.2d 27, 30 (Minn. App. 1996). Moreover, monetary damages may "supplement the granting of equitable relief." *Id.* "Equity allows recovery of … any improper financial gains made by the fiduciary." *Id.* (citing Restatement (Second) of Torts § 927 cmt. j. (1977)).

Here, causation and damages can be presumed because Plaintiffs' fiduciary duty claim sounds in equity and alleges violation of an "absolute" right. As the court explained in an analogous case:

> If a loss occurs, the law compensates the injured party by an award of money damages; but if the conduct occurs and no loss results, the legal right has not been violated. C. McCormick, McCormick on Damages at 86 (1935). On the other hand, as McCormick points out, many legal rights are not so conditioned, but are so-called "absolute" rights that the person subject to the duty shall refrain from acting in a given manner under any circumstances, regardless of whether loss or detriment would result. When such an "absolute" right is breached, the law provides a remedy, usually by awarding "nominal" damages.
>
> The law treats a client's right to an attorney's loyalty as a kind of "absolute" right in the sense that if the attorney breaches his or her fiduciary duty to the client, the client is *deemed injured even if no actual loss results*.

*Perl v. St. Paul Fire and Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984) ("*Perl II*") (citing *In re Estate of Lee*, 9 N.W. 2d 245 (1943)).

Here, CHR's accounting statements to Plaintiffs failed to disclose that it was negotiating a profit for itself on the transaction it was duty bound to pursue in the unconflicted interest of its principal growers. This disclosure was required to have been made by accounting for both the freight cost charged and freight cost paid. Plaintiffs' fiduciary duty claim sounds in equity and Plaintiffs can be "deemed injured even if no actual loss results." *See id. comme*

## A. Fee Forfeiture is an Equitable Remedy Available Without Proof of Actual Harm

Plaintiffs seek forfeiture of the commissions CHR took for arranging the sale of their produce. Under Minnesota law, disgorgement—or "fee forfeiture"—is an equitable remedy. *See, e.g., Gilchrist v. Perl*, 387 N.W.2d 412, 414 (Minn. 1986) ("*Perl III*"). A fiduciary forfeits its fee for breaching its duty to its principal "even if the client-principal cannot prove actual injury to himself…." *Id.* at 415 (internal citations and quotations omitted); *see also Olson v. Pettibone*, 210 N.W. 149, 150 (Minn. 1926) (where defendant was a double agent for buyer and seller, plaintiff able to rescind contract "without showing injury or prejudice"). Fee forfeiture may be partial, but "if the trier of fact determines that there is actual fraud or bad faith, the result is total fee forfeiture." *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 780 (Minn. App. 2006).

*Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) ("*Perl I*") is instructive. There, the Minnesota Supreme Court affirmed the lower court's finding that the defendant law firm that negotiated settlements for plaintiffs, while also paying the claims adjuster with whom it negotiated, breached its fiduciary duties and had to forfeit its fees. Plaintiffs claimed the payments were made to settle the claims while the defendant firm argued the payments were for unrelated consulting work. *See id.* at 409 n.2. The *Perl I* court granted summary judgment to plaintiffs holding defendant breached its "duty to disclose any material matter bearing upon the attorney's duty to represent the client with undivided loyalty." *Id.* at 410. The firm should have disclosed its separate engagement with the claims adjuster. *Id.*

In *Perl I*, the appropriate remedy was disgorgement of the fee because "this court has repeatedly stated that an attorney *(or any fiduciary)* who breaches his duty to his client forfeits his right to compensation." *Id.* at 411 (emphasis added). This is true even if the principal *"cannot prove actual injury…" Id.* (emphasis added). The Minnesota Supreme Court noted the strong policy argument in favor of this approach to "insur[e] absolute fidelity to the principal's interests…." *Id*. Other states have likewise recognized that "[a]n agent's compensation is not only for specific results but also for loyalty." *See, e.g., Burrow v. Arce*, 997 S.W.2d 229,

17

238 (Tex. 1999) (actual harm need not be proven because "[i]t is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation").

After the ruling in *Perl I*, the Minnesota Supreme Court had an opportunity to again consider its fiduciary jurisprudence when reviewing an appeal determining that the forfeited fees were covered by the malpractice policy as "money damages." *Perl II*, 345 N.W.2d 209. The Court affirmed its earlier ruling and again held that where there is a breach of the "absolute" right to loyalty, "***the client is deemed injured even if no actual loss results***." *Id.* at 212 (emphasis added). The proper remedy is then forfeiture of commissions paid. *See id.* Critically, the Minnesota Supreme Court noted the trial court's summary judgment decision assumed that defendant attorney believed he could negotiate the plaintiffs' settlements in good faith and arms' length and that the payments to the adjuster were for completely different purposes. *Id.* at 214 n.4. It was no defense no actual harm occurred.

*Perl I* and its progeny have been analyzed by this Court and cited for the same proposition that fee forfeiture is an equitable remedy for breach of a fiduciary duty that is available in the absence of actual harm. *See Domain Assets, LLC v. Petters*

*Group Worldwide, LLC*, No. 06-4379 (PAM/JSM), 2008 WL 11347731 (D. Minn. Apr. 4, 2008). Other Minnesota cases have cited with approval the holding in *Gilchrist*. *See Commercial Assoc.*, 712 N.W.2d at 780 (analyzing *Perl* cases and agreeing that no actual harm was required to establish "right to compensation"); *see also generally, Workers' Comp. Reinsurance Ass'n v. Wells Fargo*, No. A11-1260, 2012 WL 1253094 at *13 (Minn. App. April 16, 2012) (unpublished) (citing *Perl II* and noting fee forfeiture is to be awarded "regardless of actual damages sustained"); *Hearing Assocs., Inc. v. Downs*, A16-1317, 2017 WL 2414852 at *11 (Minn. App. June 5, 2017) (unpublished) (citing *Perl III* and affirming trial court's award of full commission forfeiture based on finding of bad faith).[7]

Minnesota law, as applied in *Perl*, and later cited with approval by numerous courts, holds that actual harm need not be shown to obtain fee forfeiture. Assuming that CHR breached its fiduciary duties to them, Plaintiffs do not have to show actual harm to obtain the equitable remedy of fee forfeiture.

---

[7] Minnesota's rule does not stand alone. Texas law similarly does not require proof of actual damages to obtain fee forfeiture and this rule "accords with the rule adopted in several other states, the Restatement (Second of Trusts) § 243, the Restatement (Second) of Agency 469, and the Restatement (Third) of the Law Governing Lawyers, 37, 55. It also comports with the two circuit level decisions on the issue, *Hendry v. Pelland*, 73 F.3d 397 (D.C. Cir. 1996) (applying D.C. law), *Frank v. Bloom*, 634 F.2d 1245, 1257-58 (10th Cir. 1980) (applying Kansas law)." *Huber v. Taylor*, 469 F.3d 67, 77 (3rd Cir. 2006).

### III. Plaintiffs' Remedies Are Calculated by the Amount of CHR's Commissions and Freight Markup

Plaintiffs seek forfeiture of the commissions CHR charged Plaintiffs for its breach of fiduciary duty and seek disgorgement of the freight profit for either its violation of Section 2 of PACA or for its breach of fiduciary duty.

#### A. Calculation of Fee Forfeiture

The Minnesota Supreme Court "has repeatedly stated that an attorney (*or any fiduciary*) who breaches his duty to his client forfeits his right to compensation." *Perl I*, 320 N.W. 2d at 411 (emphasis added). In *Perl III*, the Minnesota Supreme Court affirmed certification of the class and its prior holding that a faithless fiduciary forfeits its fee. *See Perl III*, 387 N.W.2d 412. In so doing, if the evidence at trial proves actual bad faith or fraud, then the full amount of the fees paid must be forfeited. If the evidence does not show bad faith or fraud, then scaled fee forfeiture is applied. *See also, e.g., Commercial Assocs.*, 712 N.W.2d at 780.

For example, in *Commercial Associates* an insurance broker procured workers' compensation insurance for a company in exchange for a commission. 712 N.W. 2d 772. In addition to earning commission from the company, the broker also earned a commission from the third-party insurance company. *See id.* The jury found the company violated its fiduciary duty by not disclosing it would receive

a commission from the third-party insurance company, and though the jury also found the plaintiff company did not suffer actual damages, it yet awarded return of the commissions paid. *Id.* The appellate court analyzed the appropriate remedy and noted the "purpose of the equitable remedy of fee forfeiture is distinct from that of an actual-damages award. Money damages are awarded as compensation for actual loss or injury, while a fee forfeiture is awarded to vindicate a client's "absolute right" to loyalty, *regardless of actual damages sustained*." *Id.* at 778 (emphasis added) (citing *Perl II*).

Further, in *Wells Fargo*, the court reviewed the jury award of compensatory damages for breach of fiduciary duty in addition to equitable damages of scaled fee forfeiture. *See generally Workers' Comp. Reinsurance Ass'n v. Wells Fargo*, No. A11-1260, 2012 WL 1253094 (Minn. App. 2012) (unpublished). That case involved a financial fiduciary who failed to act in the best interests of the principal. The district court first determined Wells Fargo did not act in bad faith and then applied the *Perl* factors to determine the amount of fee forfeiture. *See id.* at *13.

## B.  Calculating Disgorgement of Freight Markup

Whether under their PACA claim, or alternatively, under their breach of fiduciary duty claim, Plaintiffs seek disgorgement of CHR freight markup to wrest the ill-gotten gains from the hands of the wrongdoer. Under Minnesota law,

21

"damages may also be measured by the amount a defendant gained from a breach of a fiduciary duty." *Blum v. Thompson*, 901 N.W.2d 203, 216 (Minn. App. 2017). Among other categories, these damages can include "…any improper financial gains made by the fiduciary." *See R.E.R. v. J.G.*, 552 N.W.2d 27, 30 (Minn. App. 1996) (citing Restatement (Second) of Torts § 927 cmt. j. (1977)); *see also Bloomquist v. Wisdom Develop. Group, LLC*, No. A08-0367, 2009 WL 67059 at *4 (Minn. App. Jan. 13, 2009) (unpublished) (same). Indeed, "[e]quity seeks to restore the plaintiff to the position he or she occupied before the breach or to claim the defendant's ill-gotten profits for the plaintiff." *Id.* Minnesota law further provides a "party cannot profit by breaching a fiduciary duty." *Brcka v. Falcon Elec. Corp.*, C8-00-1434, 2001 WL 641524 (Minn. App. June 12, 2001) (unpublished).

To be clear, Plaintiffs do not seek to recover damages from freight transactions in which CHR did not make a profit. But, where CHR marked up the actual cost of transportation, CHR must disgorge the profit.

## C. Quantifying the Amount of Fee Forfeiture and Freight Topping

While quantifying the damages sought will be based on the evidence at trial and beyond the scope of this motion, the law provides the methodology.

At trial, to determine the amount of fees to be forfeited, the parties will submit evidence related to the punitive damages factors as explained in *Perl III*. *See id.* (citing *Perl III* at 416) (applying Minn. Stat. § 549.20, subd. 3). And, as described above, the total fee forfeiture may be scaled or full, based on the evidence.

The commissions charged by CHR has been calculated by Plaintiffs' expert, Shawn Shaw. This evidence will be presented through both Mr. Shaw's testimony or in Federal Rule of Evidence 1006 summary. This evidence will be based on review of the data and invoices produced by CHR of the commissioned transactions where CHR procured freight. This amount will be a simple total sum of the commissions across the class.

Freight topping damages can similarly be proven through CHR's internal records. As CHR admitted during the class certification hearing, the company's own records show exactly how much CHR made in secret profit and "[CHR can] come in here with somebody with a chart that would show us what the profit was." *See* Feb. 25, 2022 Tr. at 56:23-57:5. By CHR's own admission, the amount of secret profits on freight is readily obtainable in CHR's records.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

Dated: May 20, 2022                          Respectfully submitted,

*/s/ Richard M. Paul III*

**PAUL LLP**                                 **WATTS GUERRA LLP**
Richard M. Paul III (*pro hac vice*)         Jennifer Neal (*pro hac vice*)
Sean R. Cooper (*pro hac vice*)              Francisco Guerra, IV (*pro hac vice*)
Laura C. Fellows (*pro hac vice*)            Mark Fassold (*pro hac vice*)
Steven L. Rowe (*pro hac vice*)              Four Dominion Drive
601 Walnut Street, Suite 300                 Building 8, Suite 100
Kansas City, Missouri 64106                  San Antonio, Texas 78257
Telephone: (816) 984-8100                    Telephone: (210) 447-0500
Rick@PaulLLP.com                             Jneal@wattsguerra.com
Sean@PaulLLP.com                             Fguerra@wattsguerra.com
Laura@PaulLLP.com                            Mfassold@wattsguerra.com
Steven@PaullLLP.com

                                             **LOYD & POLLOM, PLLC**
**STOKES LAW OFFICE LLP**                    Robert A. Pollom (*pro hac vice*)
Craig A. Stokes (MN Bar No. 0390849)         12703 Spectrum Drive, Suite 201
PO Box 6909                                  San Antonio, Texas 78249
San Antonio, Texas 78209                     Telephone: (210) 775-1424
Direct Telephone: (210) 742-2789             Robert@LP-Lawfirm.com
Telephone: (210) 804-0011
cstokes@stokeslawoffice.com

### ATTORNEYS FOR PLAINTIFFS

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 20th day of May, 2022, a copy of the foregoing was sent to all counsel of record by the use of the CM/ECF notice of electronic filing system.

*/s/ Richard M. Paul III*