## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JMR FARMS, INC. *et al.*,

          Plaintiffs,

      v.

C.H. ROBINSON WORLDWIDE, INC. *et al.*,

          Defendants.

Case No.: 20-cv-879 (PJS/HB)

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF RELEVANT FACTS ...................................................................... 2

LEGAL STANDARD ................................................................................................... 5

PLAINTIFFS' PACA CLAIM ...................................................................................... 5

   1. PACA Requires Proof Of Actual Harm For Recovery Of Damages Under
      Section 2. ............................................................................................................. 5

      a. Without Harm, Plaintiffs Lack Standing. ........................................................ 7

      b. Plaintiffs' Latest, Novel PACA Theory is Meritless. ..................................... 9

   2. Plaintiffs Cannot Recover Monetary Damages for an Alleged PACA
      Accounting Violation. ....................................................................................... 12

PLAINTIFFS' BREACH OF FIDUCIARY CLAIM ................................................. 14

   1. Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty Without
      Establishing Harm. ........................................................................................... 14

      a. The *Perl* Cases Are Anomalous. .................................................................. 15

      b. The *Perl* Cases Are Inapposite. ................................................................. 17

      c. Review of Other Jurisdictions Demonstrates Why the Court Should Not
         Adopt Plaintiffs' Novel Position. ............................................................... 22

      d. Non-Minnesota Case Law Cited by Plaintiffs Is Distinguishable. ............... 24

   2. Even if Plaintiffs Could Establish a Breach of Fiduciary Duty Claim Without
      Proving Harm, the Proper Measure of Damages Would Be a Margin Analysis.... 25

      a. The "Freight Topping" Calculation Proposed by Plaintiffs Cannot Serve
         As a Margin Analysis ................................................................................. 25

      b. "Fee Forfeiture" Is Not Calculable As Class Damages. ................................ 28

CONCLUSION .......................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Inc. Co. v. Receivable Fin. Co., L.L.C.*,
  501 F.3d 398 (5th Cir. 2007) ........................................................ 25

*Am. Banana Co. v. Republic Nat. Bank of New York, N.A.*,
  362 F.3d 33 (2d Cir. 2004)............................................................. 9

*Associated Elec. & Gas Ins. Servs. v. BendTec, Inc.*,
  822 F.3d 420 (8th Cir. 2016) ....................................................... 21

*Badrawi v. Wells Fargo Home Mortg., Inc.*,
  718 F.3d 756 (8th Cir. 2013) ....................................................... 21

*Bloomquist v. Wisdom Develop. Group, LLC*,
  No. A08-0367, 2009 WL 67059 (Minn., App. 1996) .................. 27

*Blum v. Thompson*,
  901 N.W.2d 203 (Minn. App. 2017)............................................ 27

*Brcka v. Falcon Elec. Corp.*,
  C8-00-1434, 2001 WL 641524 (Minn. App. June 12, 2001) ...... 27

*Burrow v. Arce*
  997 S.W.2d 229 (Tex. 1999)........................................................ 24

*Carlson v. SALA Architects, Inc.*,
  732 N.W.2d 324 (Minn. Ct. App. 2007) ..................................... 20

*Carter v. Michael Cutler Co*,
  No. 1:12-cv-95, 2013 WL 4788283 (M.D.N.C. Sept. 6, 2013)
  *report and recommendation adopted,* No. 1:12CV95, 2013 WL
  12304562 (M.D.N.C. Oct. 18, 2013) ............................................ 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................... 5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
  Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005)........................................................ 23

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009).......................................................................... 24

*Christy v. Saliterman*,
    179 N.W.2d 288 (Minn. 1970)..................................................................................... 15

*Ciofoletti v. Securian Fin. Grp., Inc.*,
    No. 18-CV-3025, 2021 WL 3579100 (D. Minn. Aug. 13, 2021) ................................ 21

*City of Clarkson Valley v. Mineta*,
    495 F.3d 567 (8th Cir. 2007) ......................................................................................... 8

*Combined Prof'l Res., Inc. v. Limeco, Inc.*,
    801 F.Supp. 664 (S.D. Fla. 1992), *aff'd sub nom. Combined Prof'l v.*
    *Limeco,* 9 F.3d 1558 (11th Cir. 1993)........................................................................... 7

*Combs v. Spring Creek Produce, LLC*,
    No. 3:17-CV-121-HBG, 2017 WL 3687323 (E.D. Tenn. Aug. 25, 2017) ................. 10

*Commercial Associates, Inc. v. The Work Connection, Inc.*,
    712 N.W.2d 772 (Minn. Ct. App. 2006)..................................................................... 29

*Commercial Associates, Inc. v. The Work Connection, Inc.*,
    No. C2-03-8115, 2006 WL 4687275 (Minn. Dist. Ct. 2006) ..................................... 29

*Coosemans Specialties, Inc. v. Gargiulo*,
    485 F.3d 701 (2d Cir. 2007)........................................................................................... 9

*Enterprise Bank v. Magna Bank of Missouri*,
    92 F.3d 743 (8th Cir. 1996) .......................................................................................... 5

*In re: EpiPen ERISA Litig.*,
    No. 17-1884, 2020 WL 4501925 (D. Minn. Aug. 5, 2020) ........................................ 25

*In re Estate of Lee*,
    9 N.W.2d 245 (Minn. 1943).......................................................................................... 19

*Frank v. Bloom*,
    634 F.2d 1245 (10th Cir. 1980) ................................................................................... 24

*Gilchrist v. Perl*,
    387 N.W.2d 412 (Minn. 1986)..................................................................................... 15

*Hajiabdi v. Metro. Transp. Network, Inc.*,
    No. 21-CV-268, 2021 WL 3885653 (D. Minn. Aug. 31, 2021) ................................. 21

*Hansen v. U.S. Bank Nat'l Ass'n*,
   934 N.W.2d 319 (Minn. 2019) ............................................................................ *passim*

*Harley v. Minn. Mining and Manufacturing Co.*,
   284 F.3d 901 (8th Cir. 2002) ...................................................................... 23

*Hearing Assocs., Inc. v. Downs*,
   2017 WL 2414852 (Minn. Ct. App. June 5, 2017) ...................................... 22

*Hendry v. Pelland*,
   73 F.3d 397 (D.C. Cir. 1996) ...................................................................... 24

*Huber v. Taylor*,
   469 F.3d 67 (3d Cir. 2006) .......................................................................... 24

*Hudson v. Nat'l Football League Mgmt. Council*,
   No. 1:18-CV-4483-GHW, 2020 WL 1547467 (S.D.N.Y. Mar. 31, 2020) ................ 22

*Jacobs Silver K Farms, Inc. v. Taylor Produce, LLC*,
   101 F. Supp. 3d 962 (D. Idaho 2015) ...................................................... 9, 10

*K.A.C. v. Benson*,
   527 N.W.2d 553 (Minn. 1995) .................................................................... 14

*Luigino's, Inc. v. Peterson*,
   317 F.3d 909 (8th Cir. 2003) ........................................................................ 5

*Lund v. Lund*,
   924 N.W.2d 274 (Minn. Ct. App. 2019) .................................................... 15

*Mittelstaedt v. Henney*,
   969 N.W.2d 634 (Minn. 2022) .............................................................. 16, 20

*Moore v. Robinson Env't*,
   954 N.W.2d 277 (Minn. 2021) .................................................................... 19

*Olson v. Pettibone*,
   210 N.W. 149 (Minn. 1926) ........................................................................ 22

*Pennsylvania R. Co. v. Int'l Coal Mining Co.*,
   230 U.S. 184 (1913) .................................................................................... 10

*Perl v. St. Paul Fire & Marine Insurance Co.*,
   345 N.W.2d 209 (Minn. 1984) .................................................................... 14

*Pleasants v. Am. Exp. Co.*,
   541 F.3d 853 (8th Cir. 2008) ................................................................. 21

*R.E.R. v. J.G.*,
   552 N.W.2d 27 (Minn. App. 1996) ......................................................... 27

*Ramin' Corp. v. Wills*,
   No. 09-14-00168-CV, 2015 WL 6121602 (Tex. App. Oct. 15, 2015) ................. 24, 25

*Ransom v. VFS, Inc.*,
   918 F. Supp. 2d 888 (D. Minn. 2013) ..................................................... 21

*Raske v. Gavin*,
   438 N.W.2d 704 (Minn. Ct. App. 1989) .................................................. 16

*Rice v. Perl*,
   320 N.W.2d 407 (Minn. 1982) ......................................................*passim*

*S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc*
   702 F. App'x 874 (11th Cir. 2017) .................................................*passim*

*Schulz v. Pataki*,
   137 F. Supp. 2d 80 (N.D.N.Y. 2001) ....................................................... 9

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .......................................................................... 11

*Sorenson v. Sorenson*,
   No. CV 20-2121, 2022 WL 329678 (D. Minn. Feb. 3, 2022) ........................... 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................... 8

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) .................................................... 23

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   137 S. Ct. 1645 (2017) ........................................................................ 8

*Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd.*,
   439 N.W.2d 418 (Minn. App. 1989) ...................................................... 29

*Turnbow v. Life Partners, Inc.*,
   No. 3:11-CV-1030-M, 2013 WL 3479884 (N.D. Tex. July 9, 2013) .................... 27

*Valley Forge Christian Coll. v. Americans United for Separation of Church*
    *& State, Inc.*,
    454 U.S. 464 (1982) ................................................................................ 8

*Wandersee v. Brellenthin Chevrolet Co.*,
    102 N.W.2d 514, 520 (Minn. 1960) ...................................................... 19

*Workers' Comp. Reinsurance Ass'n v. Wells Fargo Bank, N.A.*,
    2012 WL 1253094 (Minn. Ct. App. Apr. 16, 2012) ......................... 22, 29

## Statutes

7 U.S.C. § 499b ...........................................................................*passim*

7 U.S.C. § 499e...........................................................................*passim*

MINN. ST. SEC. 480A.08(3) .............................................................. 27, 28

## Regulations & Rules

7 C.F.R. § 46.29.............................................................................. 10, 13

7 C.F.R. § 46.32............................................................................ 7, 10, 11

Fed. R. Civ. P. 56............................................................................... 5

## Other Authorities

Restatement (Second) of Torts, § 874 (1979) ..................................... 15

Restatement (Second) of Torts, § 927 cmt.j. (1977) .......................... 15

*Tom Lange Co., Inc. v. Anic, Inc.*
    PACA Dkt. R-93-81............................................................... 11, 12

William A. Webster, *Minnesota Adopts Sliding Scale Approach to
    Determine Damages for an Attorney's Breach of Fiduciary Duty*
    WILLIAM MITCHELL L.R., 169 (1988) ......................................... 18

# INTRODUCTION

Plaintiffs admit they cannot show the putative class of growers they seek to represent was actually harmed.  Instead, they fashion a novel theory of relief excusing their fundamental burden of showing harm—a concept that, for good reason, no court has ever sanctioned in this context.  Establishing actual harm is foundational to American jurisprudence and an essential element of not only tort law, but for determining justiciability at a constitutional level.  Yet Plaintiffs contend they need not demonstrate this essential element of their case in order to recover under the legal theories for which they seek class certification.  Plaintiffs' contention is wrong.

Plaintiffs claim violations of the Perishable Agricultural Commodities Act ("PACA") and a breach of fiduciary duty.  To recover under these claims, they request the Court ignore decades of case law in order to lighten their burden in a manner no court considering similar claims and facts has done.

Nothing in the language of PACA relieves a plaintiff's burden of showing actual harm—nor has any court construing PACA endorsed such a contention.  Plaintiffs' novel interpretation of PACA regulations is unsupported and cannot absolve Plaintiffs from this burden.

Plaintiffs' breach of fiduciary duty claim fares no better.  State and federal case law requiring actual harm caused by a breach of fiduciary duty are legion.  To avoid the crushing weight of authority they face, Plaintiffs attempt to exploit the *Perl* string of cases arising out of the unique duties imposed upon *attorneys*.  They purport to base such claims on equity, but an end-run around of the black letter elements of a breach of fiduciary duty

claim is the opposite of equitable.  Equity, precedent, and constitutional justiciability all demand Plaintiffs show actual harm to recover damages.

In addressing these issues, the Court posed four questions concerning whether Plaintiffs are required to show actual harm to recover damages for either a violation of section 2 of PACA or a common law breach of fiduciary duty and, if proof of harm is not required, how damages under each claim should be calculated.  (ECF 142).  Defendants answer each question below.

## STATEMENT OF RELEVANT FACTS

Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company (collectively "CHR") offer commercial marketing and sourcing services through its Robinson Fresh division to growers around the world, including Bowles Farming Company, Inc., and Bonne Idee, LLC ("Plaintiffs").  (Ex. 1, C.H. Robinson Worldwide, Inc.'s 2021 Form 10-K).[1]  CHR's commercial relationship with Plaintiffs were contract-based.  (Ex. 2, CHR's Responses to Plaintiffs' First Set of Interrogatories, No. 18; Baumann Dec. 10, 2021 Decl., ¶ 5 (attached as Exhibit 11)).  These contracts dictated the duties and obligations between CHR and Plaintiffs.  (Ex. 3, Bowles Farming Dep. Tr., 65:15-66:6; Ex. 4, Bonne Idee Dep. Tr., 95:22-96:19).  Among other things, the contracts provided CHR with complete control and discretion to sell the Plaintiff growers' produce "FOB" or "Delivered."  (Ex. 5, Bonne Idee 2017 Agreement, ¶ 5(c); Exs. 6-9, Bowles 2016-2019 Agreements, ¶ 5(c)).

---

[1] *See* Declaration of Mark Wallin, which attaches each exhibit referenced herein.

2

An "FOB" sale only includes the price of the produce, whereas a "Delivered" sale includes the price of the produce plus any additional costs to sell, including, most significantly, the cost of freight. (Ex. 10, CHR Dep. Tr. Vol. 1, 177:14-22; Ex. 3, 70:4-8; Ex. 4, 120:18-121:17; Ex. 11, ¶ 5; Ex. 12, Baumann Dep. Tr., 57:11-19). Plaintiffs' contracts provided that CHR would remit proceeds from the sales of their produce based on the "FOB" sale price, not the "Delivered" sale price. (Ex. 5, ¶ 5(h)(iv); Exs. 6-9, ¶ 5(h)(iv)). All charges against the growers' returns, such as freight rejection, are contractually-based and disclosed to the growers through the grower's online portal, the Famous software they have access to, or upon request. (Ex. 11, ¶ 6; Ex. 12, 221:10-222:16; Ex. 13, CHR Dep. Tr. Vol 2, 189:21-191:16).

Robinson Fresh customers decide whether a sale is FOB or Delivered, and for Delivered sales, the customer, ***not the grower***, pays extra for CHR's North American Surface Transportation ("NAST") division to arrange for freight. (Ex. 14, Castagnetto, 58:6-10, 73:5-74:11, 225:20-226:8; Ex. 11, ¶5-6; Ex. 12 51:3-12, 141:5-15; Ex. 4, 158:2-4; Ex. 13, 205:7-16). As per contract, the proceeds CHR remits to growers exclude any amounts paid by customers to CHR for freight. (Ex. 11, ¶ 6; Ex. 12, 92:2-93:7, 96:18-97:10, 101:3-102:18; Ex. 13, 177:15-178:14, 186:25-187:7, 193:4-24, 205:2-206:14, 228:13-15; Ex. 15, CHR Dep. Tr. Vol. 3, 32:19-41:13).

Plaintiffs and other growers were aware CHR brokered freight through NAST, and that CHR, like other freight brokers, made profits on freight. (Ex. 4, 93:8-16, 128:15-20, 147:6-17, 151:2-17; Ex 16, Exhibit 214 to Bonne Idee Dep.; Ex. 3, 71:24-72:24, 147:14-20; Ex. 17, Central Florida Fruit Dep. Tr., 75:7-22, 179:10-180:22; Ex. 18, Wainwright

Rule Dep. Tr., 131:10-132:25, 159:5-21; Ex. 19, BG Catlin Dep. Tr., 212:6-213:10; Ex. 20, Hoosier Melons Dep. Tr., 75:5-15, 77:11-24, 177:6-180:21, 274:10-275:11; Ex. 21, Melon Acres Dep. Tr., 160:13-161:2, 163:4-165:3). These were not "secret profits." (Ex. 12, 70:12-73:7; Ex. 14, 188: 20-189:5, 189:25-193:13). CHR has no rule or policy against providing freight information to growers, and has provided such information when asked. (Ex. 12, Baumann, 72:16-73:7; Ex. 14, 109:2-11). However, growers rarely requested such information. (Ex. 3, 72:10-73:3, 166:6-167:5, 189:13-20; Ex. 17, 138:9-139:10; Ex. 19, 134:15-17; Ex. 20, 90:20-91:2, 161:7-162:2, 175:13-18, 224:1-225:5, 231:17-22, 271:5-11; Ex. 21, 110:6-25, 112:5-113:16, 147:14-148:18, 154:1-12, 195:4-19; Ex. 22, MEK Dep. Tr., 100:9-12, 101:15-21, 122:10-18, 130:24-131:6, 165:9-11).

In over two years of discovery, Plaintiffs have failed to develop any direct evidence establishing CHR reduced the proceeds a grower received based upon the cost of freight, and, in fact, the evidence in the record demonstrates freight does not reduce the FOB sales price. (Ex. 14, 227:11-17, 229:8-15; Ex. 1260:20-61:1; Ex. 13, 205:11-16, 205:24-206:18; Ex. 23, Tabron, 131:24-132:11; Ex. 24, Lemke, 93:14-94:14).

Instead, Plaintiffs rely on out of context emails in an attempt to anecdotally support their contention that freight effected grower returns. (ECF 159 at 5). These mischaracterized emails, however, do not establish what Plaintiffs suggest. Just the opposite. These emails demonstrate Robinson Fresh endeavored to ensure growers were not impacted by freight, and that freight charges negatively impacted Robinson Fresh, ***not the growers***. (*See* Baumann June 2, 2022 Decl. ¶ 6 (attached as Exhibit 25); Castagnetto Decl., ¶ 8 (attached as Exhibit 26); Triestram Decl., ¶ 9 (attached as Exhibit 27)). Plaintiffs

reference no other "evidence" supporting a finding of harm or damages on either an individual or (proposed) class-wide basis.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Luigino's, Inc. v. Peterson*, 317 F.3d 909, 911 (8th Cir. 2003).  Courts must view evidence and inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996).  "Summary judgment procedure is properly regarded . . .  as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

## PLAINTIFFS' PACA CLAIM

### 1.   PACA Requires Proof Of Actual Harm For Recovery Of Damages Under Section 2.

In the operative Amended Complaint and their Motion for Class Certification, Plaintiffs claim CHR engaged in "unfair conduct" under PACA by failing to "truly and correctly" account under 7 U.S.C. § 499b(4) ("Section 2")—which states it is unlawful for "any commission merchant, dealer or broker…to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had…."  (ECF 67 at ¶ 184; ECF 90 at 9, 25).

The Court need not analogize to arcane, unrelated statutes, or a tenuous reading of immaterial PACA regulations to determine that recovery of damages under Section 2 requires proof of actual harm.  Instead, the Court need only look to the plain language of the statutory provision allowing for "Liability to persons injured," § 499e, under PACA, and cases directly construing it.

Section 499e(a) establishes liability for violations of Section 2:

> If any commission merchant, dealer, or broker violates any provision of [Section 2] he shall be liable to the person or persons *injured* thereby for the full *amount of damages* (including any handling fee paid by the injured person or persons under section 499f(a)(2) of this title) sustained *in consequence* of such violation.

7 U.S.C. § 499e(a) (emphasis added).  The plain language of the statute provides that, to be liable under Section 2, Plaintiffs must have been injured—they must have suffered damages.

Every federal court to analyze whether damages or injury must be shown to recover for a violation of Section 2 has answered in the affirmative.  For example, in *S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*,[2] the Eleventh Circuit reversed the district court's award because the grower failed to establish any injury was caused by the alleged record keeping violations under Section 2.  702 F. App'x 874, 879-80 (11th Cir. 2017).  The grower failed to allege, and neither the USDA judicial officer nor district court found, that they "suffered any damages" as a result of the "deficient recordkeeping" at issue.  *Id.*

---

[2] Ignoring this part of the decision, Plaintiffs also cite to *S & S Packing*.  As discussed below, this case does not support their position that no harm need be shown under PACA.

Citing §§ 499b(4) and 499e(a), the court explained, "PACA does not impose punitive sanctions for sloppy bookkeeping; it has the familiar requirement that the violation must have caused the injury for which the claimant is to be compensated." *Id*. at 879.

Likewise, in *Carter v. Michael Cutler Co.*, the court dismissed a Section 2 claim, citing §§ 499b and 499e(a), holding plaintiff's claim failed because it did not allege damages as a result of the PACA violation. No. 1:12CV95, 2013 WL 4788283, at *5-6 (M.D.N.C. Sept. 6, 2013), *report and recommendation adopted,* No. 1:12CV95, 2013 WL 12304562 (M.D.N.C. Oct. 18, 2013); s*ee also Combined Prof'l Res., Inc. v. Limeco, Inc.,* 801 F.Supp. 664, 673 (S.D. Fla. 1992), *aff'd sub nom. Combined Prof'l v. Limeco,* 9 F.3d 1558 (11th Cir. 1993) (finding defendant could not be held liable for a violation of § 46.32(a) of PACA's regulations because plaintiff had "not demonstrated any harm resulting therefrom").

Here, as in *S&S Packing, Inc*. and *Carter*, Plaintiffs must establish CHR's alleged PACA violation caused an injury in order for Plaintiffs to recover. No federal case that has addressed this issue has held to the contrary and, as such, Plaintiffs must establish actual harm in order to recover under Section 2.

### a.   Without Harm, Plaintiffs Lack Standing.

Without establishing harm, Plaintiffs lack Article III standing for their PACA claim.[3]   To establish standing, "the plaintiff must have (1) suffered an injury in fact, (2)

---

[3] Plaintiffs attempt to reframe the Court's questions to avoid this standing issue. However, this issue cannot be ignored by the Court. Article III standing is jurisdictional, and a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citation omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal citation and quotation omitted).  For an injury to be "particularized," it must affect the plaintiff in a personal and individual way.  *Id.*; *see also*, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (finding plaintiff must show he or she personally suffered actual or threatened injury caused by the defendant's alleged conduct to establish standing).  A "concrete" injury must be "*de facto*"— real, actually existing, and not abstract.  *Spokeo*, 578 U.S. at 340.

In *Spokeo*, the Supreme Court held that simply alleging a violation of a federal statute did not necessarily satisfy the constitutional standing requirement and that some concrete harm must be alleged.  *Id.* at 342.  Here, Plaintiffs have failed to establish the type of concrete and particularized harm the Supreme Court has identified as necessary.  They have not shown actual harm that individually affects each Plaintiff and putative class member.  This is precisely what *S & S Packing* alluded to when the court stated PACA had a "familiar requirement that the violation must have caused the injury[.]"  702 F. App'x at

---

relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017); *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

879; *see also*, *Schulz v. Pataki*, 137 F. Supp. 2d 80, 83 (N.D.N.Y. 2001) (finding plaintiff lacked standing for their PACA claim for failing to allege any distinct injury).

This is consistent with PACA's purpose "to ensure payment to the unpaid seller in the perishable agricultural commodities industry" as non-payment would result in actual harm. *Jacobs Silver K Farms, Inc. v. Taylor Produce, LLC*, 101 F. Supp. 3d 962, 969 (D. Idaho 2015) (internal quotations omitted).[4]   "Through PACA, Congress sought 'to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices. . . and providing for *collecting damages* from any buyer or seller who fails to live up to his contractual obligations.'"   *Am. Banana Co. v. Republic Nat. Bank of New York, N.A.*, 362 F.3d 33, 36 (2d Cir. 2004) (quoting H.R. Rep. No. 98-543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406).  For Plaintiffs' PACA claims to be justiciable, harm is required.

### b.   Plaintiffs' Latest, Novel PACA Theory is Meritless.

Nearly two and a half years into this litigation, Plaintiffs have articulated a new theory of recovery under PACA.  This novel "disallowance" theory is unsupported by statute and has never been adopted by a federal court construing PACA.[5]  Plaintiffs' claim

---

[4] *See also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) ("[PACA] provides growers and sellers of agricultural produce with a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." (internal quotations omitted)).

[5] Plaintiffs' reliance on the § 8 of Interstate Commerce Act ("ICA") to support their theory is misplaced.  In construing the ICA language relied upon by Plaintiffs, the Supreme Court

support for this new theory in 7 CFR § 46, citing § 46.29(a), which states "[c]harges which cannot be supported by proper evidence in the records of the commission merchant or joint account partner shall not be deducted[,]" and § 46.32(c), which states:

> [u]nless a growers' agent is specifically authorized in his contract with the growers to use the services of brokers, commission merchants, joint partners, or auctions, he is not entitled to use these methods or marketing the growers' produce. Any expense incurred for such services, without the growers' permission, cannot be charged to the growers.

Neither section proves helpful.[6]

Both sections contemplate an "expense" "charged" to a grower, and if the charge was improper, the grower would logically have been monetarily harmed by it.[7]   However neither provision, by its plain text meaning, authorizes a private right of action without showing harm.   In fact, given the Article III standing requirements discussed above, the opposite should be presumed: actual injury is *always* a requirement.

---

held that a plaintiff must have "sustained some loss or injury." *Pennsylvania R. Co. v. Int'l Coal Mining Co.*, 230 U.S. 184, 200, 206-08 (1913).

[6] Plaintiffs also point to second clause of § 499e(b) which states "this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." This clause does not absolve Plaintiffs of establishing harm. It merely means PACA does not preempt additional state or common law brought on the same facts—such as Plaintiffs' breach of fiduciary duty claim. *See, e.g., Jacobs Silver K Farms, Inc.*, 101 F. Supp. 3d at 971 (finding § 499e(b) means PACA does not preempt state statutory law claim); *Combs v. Spring Creek Produce, LLC*, No. 3:17-CV-121-HBG, 2017 WL 3687323, at *4 (E.D. Tenn. Aug. 25, 2017) (same).

[7] Section 46.29(a) contemplates a charge for which there is no "proper evidence." However, in such case the grower would have suffered a loss of revenue equivalent to that charge—in other words, harm. No federal cases citing this provision support Plaintiffs' theory that no harm need be shown.

Case authorities cited by Plaintiffs do not compel otherwise. *S & S Packaging*, does not stand for the proposition cited by Plaintiffs, who claim the court cited § 46.32(c) and "*did not require* Plaintiff to show actual damages." (ECF 159 at 13). Nothing in *S & S Packaging* indicates plaintiff had not established actual harm, nor that plaintiff sought to be absolved of showing injury. Given that court's earlier comments that "[PACA] has the familiar requirement that the violation must have caused the injury for which the claimant is to be compensated[,]" such an about-face would be remarkable. 702 F. App'x at 879. The Eleventh Circuit also directed the district court to "calculate the *damages* due to [plaintiff] consistent with this opinion," indicating plaintiff's monetary loss must be measured. *Id.* at 885. This case is unhelpful to Plaintiffs.

Plaintiffs likewise misapply the administrative ruling in *Tom Lange Co., Inc. v. Anic, Inc.*, PACA Dkt. R-93-81. In *Tom Lange*, a purchaser sought to off-set damages owed to seller for unpaid, invoiced amounts based upon the sellers' non-disclosure of freight costs. The relationship in *Tom Lange* is unlike the relationship between CHR and the Plaintiffs because Plaintiffs are not paying for transportation, customers are.[8] Under *Tom Lange*, the cost of freight would be disclosed to *customers*, who pay for the freight, ***not growers***.

---

[8] As an administrative opinion, *Tom Lange* is not binding on this Court and is, at best, entitled to *Skidmore* deference—assessed by looking at numerous factors including "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Given the factual distinctions between *Tom Lange* and the present case, the Court need not afford *Tom Lange* any deference.

Moreover, the purchaser in *Tom Lange* was not awarded the non-disclosed freight costs—the Administrative Law Judge merely off-set the total amount owed. Despite this set-off, the ALJ ordered the purchaser to pay the amount the seller was *damaged* by purchaser's failure to pay amounts invoiced. *Id.* at 10 ("Section 5(a) of the Act requires that we award to the person or persons injured by a violation of [Section 2] 'the full amount of damages sustained in consequence of such violations.'"). Further, had the purchaser paid those amounts, it would have been harmed because it would have directly lost the money paid to the seller, unlike Plaintiffs, who do not pay CHR for freight.

Neither *S & S Packaging*, *Tom Lange*, nor any other federal court, has ever endorsed Plaintiffs' novel theory. Likely because that theory would undermine the bedrock principle of justiciability implicit in every case.

### 2. Plaintiffs Cannot Recover Monetary Damages for an Alleged PACA Accounting Violation.

In their Memorandum answering the Court's questions, Plaintiffs fail to distinguish between their two claims when discussing the appropriate measure of damages if no harm is required. Rather, they propose their expert, D. Shawn Shaw, has constructed and prepared a "freight topping" calculation capable of determining damages under the alleged Section 2 violation *and* breach of fiduciary claims. However, as discussed in detail below, this "damages" calculation is unsupported by law and factually cannot be calculated as proposed.[9]

---

[9] In addition to the problems discussed below with Plaintiff's reliance on their freight topping calculation, this type of freight fee is the type of fee PACA identifies should not in and of itself constitute a violation. 7 U.S.C. § 499b(4) ("this paragraph shall not be

Additionally, Plaintiffs contend that their novel "disallowance" theory would require CHR to disgorge any and all freight markup, including the charges billed to and paid by CHR's freight customers. Even if their "disallowance" theory had a leg to stand on—which, as discussed above, it does not—7 C.F.R. § 46.29(a) does not authorize this:

> *When rendering account sales for produce handled for or on behalf of another, an accurate and itemized report of sales and expenses charged against the shipment* shall be made. It is a violation of [Section 2] to fail to render true and correct accountings in connection with consignments or produce handled on joint account. Charges which cannot be supported by proper evidence in the records of the commission merchant or joint account partner *shall not be deducted.*

7 C.F.R. § 46.29(a) (emphasis added).

Plaintiffs claim "*any* charges for which CHR failed truly and correctly to account are by that very fact rendered entirely impermissible and must be awarded to the Growers as damages." (ECF 159 at 10) (Emphasis added). This is a disingenuous attempt to recover third-party payments to CHR by seeking the disgorgement of freight charges, which Plaintiffs have consistently failed to show had any impact on grower proceeds. Freight charges do not reduce grower FOB. *See supra.* Plaintiffs do not support their novel "disallowance" theory with evidence to the contrary, instead asking the Court to allow them to seek as damages all "freight markup" other than carrier cost billed to and paid by CHR's customers. Such expenses are not recoverable under PACA, yet plaintiffs' freight markup calculation, discussed in detail below, is constructed to do exactly this.

---

considered to make the good faith offer, solicitation, payment, or receipt of collateral fees and expenses, in and of itself, unlawful under this chapter.")

The actual answer to the Court's damages questions are more complicated and dependent on each of Plaintiffs' claims. For their Section 2 claim, even if Plaintiffs could recover without showing harm, their "relief" would require an accounting. In fact, an accounting *may* be the only remedy available for a Section 2 violation without showing harm, although Plaintiffs have seemingly waived such relief at this late stage. Section 499e(a) establishes liability for a Section 2 violation as "the full amount of damages . . . sustained in consequence of such violation." As such, if Plaintiffs truly wish to proceed on a class-wide basis without establishing damages, their remedy, were CHR found liable, is not millions of dollars in "disgorgement," but rather an accounting—which despite CHR having already provided by disclosing its accounting data through discovery, Plaintiffs still would not be able to use to show harm.

## PLAINTIFFS' BREACH OF FIDUCIARY CLAIM

### 1.   Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty Without Establishing Harm.

To state a breach of fiduciary duty claim in Minnesota, it is black letter law that Plaintiffs must plead and prove: duty, breach, causation, and damages. *See*, *e.g.*, *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). The Minnesota Supreme Court has stated a "breach of a legal duty without compensable damages … is not actionable." *K.A.C. v. Benson*, 527 N.W.2d 553, 561 (Minn. 1995). Yet Plaintiffs seek to prove only duty and breach in the context of commercial transactions. This would swallow more than half a century of Minnesota and federal jurisprudence. That cannot be the case. The *Perl* line of cases—*Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) ("*Perl I*"); *Perl v. St.*

*Paul Fire & Marine Insurance Co.*, 345 N.W.2d 209 (Minn. 1984) ("*Perl II*"); *Gilchrist v. Perl*, 387 N.W.2d 412 (Minn. 1986) ("*Perl III*") (collectively the "*Perl* Cases")—are not as broad as Plaintiffs contend, and their attempt to extend them beyond the attorney-client relationship is unsupported by binding case law.

### a.   The *Perl* Cases Are Anomalous.

The Restatement (Second) of Torts, § 874 (1979) states that "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."   For over fifty years, Minnesota law has consistently identified the same necessary elements of a breach of fiduciary duty claim. *See, e.g.*, *Christy v. Saliterman*, 179 N.W.2d 288, 294 (Minn. 1970) (discussing duty, breach, causation, and *damages* as necessary to establish a breach of fiduciary duty claim in an attorney-client relationship).

Earlier *this year*, this Court cited Minnesota case law endorsing these essential elements.  *Sorenson v. Sorenson*, No. CV 20-2121 (MJD/DTS), 2022 WL 329678, at *6 (D. Minn. Feb. 3, 2022) ("To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove four elements: duty, breach, causation, and damages." (citation omitted)).  Dozens, if not hundreds, of decisions applying Minnesota common law identify causation and damages to be *essential* elements of a breach of fiduciary duty claim and, since 1986 when the *Perl III* decision, a wealth of Minnesota Court of Appeals and Minnesota Supreme Court decisions identified causation and damages among the elements a plaintiff must prove to succeed in a breach of fiduciary duty claim. *See, e.g.*, *Lund v. Lund*, 924 N.W.2d 274, 284 (Minn. Ct. App. 2019) ("Because [plaintiff] failed to produce evidence of

damages, an essential element of a breach-of-fiduciary-duty claim, we need not reach her arguments with respect to other elements of her claim."); *see also*, *Raske v. Gavin*, 438 N.W.2d 704, 706 (Minn. Ct. App. 1989) (identifying duty, breach, causation, and damages as the elements of the claim and that "[f]ailure to prove any of these four elements defeats recovery.").

As recently as February 2, 2022, the Minnesota Supreme Court found damages to be an essential element of a breach of fiduciary duty claim—and in the very type of attorney-client relationship examined in the *Perl* cases Plaintiffs assert as analogous and authoritative for class recovery without proof of actual harm in the commercial litigation at issue here. *Mittelstaedt v. Henney*, 969 N.W.2d 634, 640 (Minn. 2022) ("The elements of a legal malpractice breach-of-fiduciary-duty claim are: (1) the existence of an attorney-client relationship, which establishes a standard of conduct, i.e., the duty; (2) a breach by the attorney of one or more of the fundamental obligations owed to the client under that standard of conduct; (3) causation; and (4) damages."); *see also Hansen*, 934 N.W.2d at 327.

*Hansen* is particularly exemplative of the necessary role of damages in a breach of fiduciary duty—particularly outside the attorney-client relationship. The case, brought by beneficiaries against administrators of an estate, identified damages as the only element at issue when examining the district court's dismissal for failure to state a breach of fiduciary duty claim. *Id*. at 327. The Court noted Minnesota's "some damage" rule of accrual requires actual financial harm or the loss of a legal right must be pled, *id*. at 327-28, and that damages must be non-speculative:

16

>The fundamental problem with U.S. Bank's position—at least at this stage in the proceedings—is that nothing in the pleadings shows that U.S. Bank could have negotiated a better deal with CFP. There is also nothing in the pleadings suggesting that another buyer for the property existed who would have paid more than the Beneficiaries were ultimately paid under the deal that did close, or that the Estate would have been better off holding on to the property. Based on the allegations in the complaint, U.S. Bank's statute of limitations argument rests on purely speculative harm. We cannot adopt a rule that would invite the kind of speculation inherent in the rejected occurrence rule of damage accrual.

*Id.* at 330.  The court ultimately held plaintiff *had* properly pled damages, but limited them to only those whose statute of limitations had not run and were non-speculative.  *Id.* at 331.

Here, *Hansen* and Minnesota law require that Plaintiffs *must* establish damages to state their breach of fiduciary duty claim.  Indeed, they must establish more than the speculative damages which courts have rejected as inadequate to a breach of fiduciary duty claim.  *Id.* at 330.  This, they cannot do and have consistently failed to provide evidence to the contrary, instead relying on the unsupported and speculative proposition their expert's "freight topping" charges impacted the final FOB sale price.  Absolving Plaintiffs from establishing actual causation and damages would gut the breach of fiduciary duty cause of action under Minnesota law.

### b.   The *Perl* Cases Are Inapposite.

Plaintiffs understandably rely on the *Perl* Cases to support their position.  If the *Perl* Cases applied here, Plaintiffs' burden would be exponentially lighter.  However, the *Perl* Cases are inapposite.  Critically, the *Perl* defendants were attorneys who only owed a *per se* fiduciary duty to their clients under Minnesota law and had defined, unambiguous

obligations under the Rules of Professional Conduct—unlike CHR.  Because of this, there were significant public policy considerations underlying the *Perl* Cases, whose ultimate decision was driven, in large part, by the long-standing policy in favor of penalizing attorney misconduct.  *See*, *e.g.*, William A. Webster, *Minnesota Adopts Sliding Scale Approach to Determine Damages for an Attorney's Breach of Fiduciary Duty*, WILLIAM MITCHELL L.R., 169 (1988) (attached as Exhibit 29).  The heightened duties imposed on attorneys, based upon centuries of American and English common law, cannot be equivalent to the commercial, contractual relationship between CHR and the growers.

In the *Perl* Cases, defendants were sued for breaching their fiduciary duties as attorneys.  *Perl I*, the genesis of Plaintiffs' no-harm theory, relies entirely on the special relationship between attorneys and clients.  The defendants were an attorney and his law firm (the "Perl Defendants") who had represented plaintiff in her settlement of a tort claim. *Perl I* at 408.  The Perl Defendants negotiated the settlement with an insurance adjuster who also worked part-time for the Perl Defendants.  *Id*.  This relationship was never disclosed to plaintiff.  *Id*. at 409.

The *Perl I* Court affirmed the trial court's judgment in plaintiff's favor, despite a failure to prove damages.  *Id*. at 410-11.  In doing so, the Court relied on principles applicable specifically to the attorney-client relationship.  *Id*.  Relying on a legal malpractice treatise, the court explained the "disclosure rule" imposed upon attorneys defined the Perl Defendants' obligations: "[t]he attorney is under a duty to represent the client with undivided loyalty, to preserve the client's confidences, and *to disclose any material matters bearing upon the representation of these obligations*."  *Id.* at 410

(emphasis original) (citing R. Mallen & V. Levit, *Legal Malpractice*, § 121 at 208 (2nd ed. 1981)).  The court went on to explain that "[a]n attorney has an obligation to prevent placing his client in a position which might well taint a settlement transaction. *The profession's standards of integrity demand no less*."  *Perl I* at 411 (emphasis added).

While the *Perl I* Court did state that ". . . an attorney (*or any fiduciary*) who breaches his duty to his client forfeits his right to compensation[,]" *Perl I,* at 407 (emphasis added), this parenthetical is nothing more than obiter dictum.  *Moore v. Robinson Env't,* 954 N.W.2d 277, 285 n.9 (Minn. 2021) ("Dicta are generally considered to be expressions in a court's opinion which go beyond the facts before the court and therefore are the individual views of the author of the opinion and not binding in subsequent cases.") (quoting *State ex rel. Foster v. Naftalin*, 246 Minn. 181, 74 N.W.2d 249, 266 (1956).  This parenthetical comment went well beyond the facts of the *Perl* Cases, which dealt only with the attorney-client relationship.  As such, this Court need not, and should not, rely on such dicta. *Wandersee v. Brellenthin Chevrolet Co.*, 102 N.W.2d 514, 520 (Minn. 1960) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication.") (citation omitted)).

Further, the *Perl I* Court's statement that "an attorney (or any fiduciary) who breaches his duty to his client forfeits his right to compensation[,]" is supported by *In re Estate of Lee* and demonstrates why such a rule is, and should remain, limited to attorneys:

> It is equally well settled that an attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation. An attorney is an officer of the court, sworn to

> aid in the administration of justice and to act with strict fidelity
> to both his clients and the courts. Unquestioned fidelity to their
> real interests is the duty of every attorney to his clients. When
> a breach of faith occurs, the attorney's right to compensation is
> gone.

*Id.* (citing *In re Estate of Lee*, 9 N.W.2d 245, 251 (1943)).

The *Perl I* Court did not analyze, nor was it presented with, any other type of fiduciary relationship and the *Perl* Cases' decision to not require harm, applies *only* to the unique contours of the attorney-client relationship.

In fact, since the *Perl* Cases were decided, the Minnesota Supreme Court has never extended the cases' logic outside an attorney-client relationship. *Compare, e.g., Mittelstaedt*, 969 N.W.2d at 639 (citing the *Perl* cases) *with Hansen*, 934 N.W.2d at 330 (no citation to the *Perl* cases). Thus, contrary to Plaintiffs' contentions, the *Perl* Cases do not sweep so broadly as to apply to all fiduciary relationships.

When comparing the duties and obligations of an attorney versus other fiduciaries, declining to extend *Perl I*'s dictum makes sense for practical reasons as well. It is black letter Minnesota law that attorneys are *per se* fiduciaries of their clients—an important distinction in this case, given that, as this Court has commented, CHR is not a *per se* fiduciary. (ECF 155, 81:16-20). Thus, if CHR owes a fiduciary duty to growers (which it does not), it could only be a *de facto* fiduciary. As such, and according to a legion of state and federal case law, whether or not CHR owes a fiduciary duty is determined on a case-by-case, or rather a relationship-by-relationship, basis. *See generally, e.g., Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007) (declining to designate an architect as a *per se* fiduciary of its client and instead looking to the specific facts to

determine whether a fiduciary duty arose); *Hajiabdi v. Metro. Transp. Network, Inc.*, No. 21-CV-268 (ECT/ECW), 2021 WL 3885653, at *4 (D. Minn. Aug. 31, 2021) (same for employer-employee); *Ciofoletti v. Securian Fin. Grp., Inc.*, No. 18-CV-3025 (JNE/ECW), 2021 WL 3579100, at *4 (D. Minn. Aug. 13, 2021) (same for an insurer-insured relationship); *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 897 (D. Minn. 2013) (same for lessor-lessee). Allowing plaintiffs to recover without showing harm on a breach of fiduciary duty claim against a *de facto* fiduciary, who may or may not have prior knowledge or understanding of its fiduciary status is manifestly unfair, especially on a class-wide basis.

By contrast, attorneys are well aware of their *per se* fiduciary obligations and the Rules of Professional Conduct including Rules requiring attorneys' to avoid conflicts of interest and demanding undivided loyalty to clients. No such ethical rules govern CHR, or its relationships with growers. To equate a commercial, contract-based relationship, with the attorney-client relationship and the policy considerations underlying it, is wrong and cannot be the result intended by the Minnesota Supreme Court.

Finally, in applying Minnesota law, this Court is bound only by the decisions of the Minnesota Supreme Court. *Badrawi v. Wells Fargo Home Mortg., Inc.,* 718 F.3d 756, 758 (8th Cir. 2013). If that court has not ruled on a particular issue, federal courts consider what rule it would likely apply. *Id.* Decisions of the Minnesota Court of Appeals are not binding on federal courts, but may be instructive. *Associated Elec. & Gas Ins. Servs. v. BendTec, Inc.*, 822 F.3d 420, 423 (8th Cir. 2016); *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 858 (8th Cir. 2008). Because the Minnesota Supreme Court in *Perl* only considered this

issue in the context of the attorney-client relationship, any subsequent decision or holding

by other courts in Minnesota, or around the country applying the *Perl* cases, is not binding

on this Court.[10]  And, because of the heightened duty owed by attorneys, not only as *per se*

fiduciaries, but also because of the ethical duties imposed upon attorneys, it does not make

sense to apply *Perl* here.

> ### c.  Review of Other Jurisdictions Demonstrates Why the Court Should Not Adopt Plaintiffs' Novel Position.

Other jurisdictions' analysis of non-attorney-client breach of fiduciary duty

provides compelling guidance here.  Federal courts in the Second Circuit construing the

"disgorgement" theory of relief, as asserted by Plaintiffs, found actual harm necessary to

establish standing in ERISA cases alleging breach of fiduciary duty.  *See Hudson v. Nat'l*

*Football League Mgmt. Council*, No. 1:18-CV-4483-GHW, 2020 WL 1547467, at *5

(S.D.N.Y. Mar. 31, 2020) (finding an ERISA breach of fiduciary duty "does not constitute

---

[10] Plaintiffs' reliance on unpublished Minnesota Court of Appeals decisions in *Hearing Assocs., Inc. v. Downs*, 2017 WL 2414852, at *11-12 (Minn. Ct. App. June 5, 2017), and *Workers' Comp. Reinsurance Ass'n v. Wells Fargo Bank, N.A.*, 2012 WL 1253094, at *6 (Minn. Ct. App. Apr. 16, 2012), are not only non-precedential, but are further inapposite because there, the respective juries found plaintiffs were actually damaged by defendants' breach.  Plaintiffs also rely upon *Olson v. Pettibone*, 210 N.W. 149 (Minn. 1926).  *Olson*, however, only stands for the fact equitable remedies are available for a breach of fiduciary duty.  *Id*. at 150.  The *Olson* court allowed for the partial recession of a fraudulently-induced contract—a situation wholly incomparable to Plaintiffs demand for speculative, unpled damages in the form of customary shipping surcharges commonplace in the industry.  *Id*.

an injury-in-fact sufficient for constitutional standing.'") (quoting *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 569 (2d Cir. 2016)).

In *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, for instance, a complaint was filed against defendants alleging an ERISA breach fiduciary duty.  433 F.3d 181, 186 (2d Cir. 2005).  Although the case settled, there were post-settlement objections focusing on whether plaintiffs demonstrated harm.  *Id*. at 197.

Reversing the district court, the Second Circuit distinguished requests for disgorgement from purely injunctive relief as it pertained to establishing actual injury, explaining that "[o]btaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by 'demonstrat[ing] individual loss,' . . . to wit, that they have suffered an injury-in-fact."  *Id*. at 200 (internal citation omitted).  Citing the Eighth Circuit, the court stated ERISA beneficiaries must establish a direct injury to assert an ERISA breach of fiduciary duty claim.  *Id*. (citing *Harley v. Minn. Mining and Manufacturing Co.,* 284 F.3d 901, 906-07 (8th Cir. 2002) (finding no constitutional standing because the "loss did not cause actual injury to plaintiff's interests in the plan" and the "limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties")).

As these cases show, much like Plaintiffs' PACA claim, failure to establish actual harm raises justiciability issues—even where Plaintiffs only seek disgorgement, as in *Cent. States Se. & Sw. Areas Health & Welfare Fund.  See also*, *e.g.*, *Thorsen v. Sons of Norway*,

996 F. Supp. 2d 143, 162 n.11 (E.D.N.Y. 2014) (dismissing corporate board breach of

fiduciary duty claims due to plaintiffs failure to allege damages); *Cherny v. Emigrant Bank*,

604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same for a banker-client relation).

### d.    Non-Minnesota Case Law Cited by Plaintiffs Is Distinguishable.

All of the cases cited by Plaintiffs outside of Minnesota also pertain to an attorney-

client relationship, and are thus inapposite and non-instructive.  *Burrow v. Arce*, dealt

solely with the breach of an attorney's fiduciary duty to a client under Texas law. 997

S.W.2d 229, 232 (Tex. 1999).  Furthermore, the Court of Appeals of Texas provides a

compelling counterpoint to *Burrow*, which could just as well apply to the relationships

between CHR and the growers here.  Distinguishing *Burrow*, the court reasoned:

> *Burrow* dealt with an attorney's breach of fiduciary duty to his
> client and a request that the attorney forfeit his attorney's fees,
> whereas the present case pertains to an employee's breach of
> fiduciary duty to her employer.    The attorney-client
> relationship is one of 'most abundant good faith,' requiring
> absolute perfect candor, openness and honesty, and the absence
> of any concealment or deception. . . . In contrast, under Texas
> law, an employee does not owe an absolute duty of loyalty to
> her employer.

*Ramin' Corp. v. Wills*, No. 09-14-00168-CV, 2015 WL 6121602, at *9 (Tex. App. Oct. 15,

2015) (internal quotations and citations omitted).  Even if a fiduciary duty existed, CHR

does not owe the growers an absolute duty of loyalty concomitant with the duty imposed

upon attorneys.

Similarly, *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996), *Huber v. Taylor*,

469 F.3d 67, 77 (3d Cir. 2006) (applying Texas law), and *Frank v. Bloom*, 634 F.2d 1245,

1258 (10th Cir. 1980), are all attorney-client breach of fiduciary duty cases distinguishable

for the same reasons. These non-Minnesota cases do not make Plaintiff's argument to extend the *Perl* Cases outside the attorney-client relationship any more compelling, and *Ramin' Corp.*'s critique of *Burrow* demonstrates why the attorney-client relationship is unique and is entitled to heightened protections.

> **2.    Even if Plaintiffs Could Establish a Breach of Fiduciary Duty Claim Without Proving Harm, the Proper Measure of Damages Would Be a Margin Analysis.**

The Minnesota Supreme Court has defined "damages" as any compensable damage and "not just some abstract damage." *Hansen*, 934 N.W. 2d at 327. Proof of ill-gotten gains is the appropriate measure of damages as "[d]isgorgement wrests ill-gotten gains from the hands of the wrong-doer" and is intended to be "remedial and not punitive." *Allstate Inc. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007); *see also In re: EpiPen ERISA Litig.*, No. 17-1884, 2020 WL 4501925, at *5 (D. Minn. Aug. 5, 2020) ("Equity does not allow disgorgements of all profits but only those profits inequitably retained."). As such, if CHR has breached a fiduciary duty (and it has not), a margins analysis is the proper, calculable method for determining damages for that breach. Plaintiffs failed to provide this.

> **a.    The "Freight Topping" Calculation Proposed by Plaintiffs Cannot Serve As a Margin Analysis.**

Plaintiffs insist on offering their expert, D. Shawn Shaw's, freight markup calculations as damages for their breach of fiduciary duty claim (in addition to their PACA claim). However, Shaw was not engaged to and did not attempt to conduct a margins analysis. He was charged by Plaintiffs with finding the difference between what CHR was

charged by carriers for freight on grower produce versus the charges CHR billed for that freight—regardless of whether the growers bore those costs in any way.  As Shaw himself admitted, this "freight topping" calculation is untethered from any loss to any grower.  (Ex. 28, Shaw Dep. Tr., 96:5-19, 202:24-204:9).   Rather, the calculation, resulting in the millions of dollars sought as damages by Plaintiffs, determines an average "freight topping charge"—calculated by using freight fees Shaw was only able to identify in less than 60% of the transactions—and multiplying it by the total number of growers.  (Ex. 28, 152:23-153:16).

Such an analysis not only artificially increases the alleged "damages" but, by Shaw's own admission, cannot serve as a proxy for a margin analysis.  (Ex. 28, 96:5-19, 202:24- 204:9).  Further, Shaw was told to assume "freight topping charges" were charged against grower proceeds, but never tested whether this was true (it is not),  (Ex. 28, 93:21-94:8, 95:5-16), and eliminated all potential CHR losses from his calculations.[11]  (Ex. 28, 166:17-167:35).  This type of calculation is not only factually problematic, but the exact type of speculative damages the Minnesota Supreme Court has identified as completely inappropriate.  *See supra*; *Hansen*, 934 N.W.2d at 330.

Plaintiffs have now rebranded Shaw's "freight topping damages," (ECF 91 at 12), as "freight profit."  (ECF 159 at 20).  This recharacterization is unsurprising given the case

---

[11] This was done because Shaw, who is not a lawyer, felt CHR should not be able to offset its losses, (Shaw 166:17 – 167:35), and conflicts with Plaintiffs' position that, "[t]o be clear, Plaintiffs do not seek to recover damages from freight transactions in which CHR did not make a profit." (ECF 159 at 20).

law reflected in Plaintiffs' Motion.  Moreover, it is false, as freight topping is not a proxy for profits, unlike a margin analysis.  Even in the non-precedential Minnesota appellate court decisions cited by Plaintiffs, [12] the courts required individualized proof of actual financial injury to recover damages for a breach of fiduciary duty.  "Whether damages may be awarded for breach of fiduciary duty must … be determined by an inquiry into whether the plaintiff sustained financial injury" and "damages also may be measured by the amount a defendant gained from a breach of fiduciary duty." *Blum v. Thompson*, 901 N.W.2d 203, 216 (Minn. App. 2017) (internal quotations omitted); *see also R.E.R. v. J.G.*, 552 N.W.2d 27, 29 (Minn. App. 1996) (observing breach of fiduciary duty claims generally sound in equity, allowing recovery for "the lost value of an asset, the profit to which a beneficiary was deprived, or any improper financial gains made by the fiduciary," (citing Restatement (Second) of Torts § 927 cmt.j. (1977))).

Regardless of what they call it, disgorgement based on Plaintiffs' "freight markup" calculation—without regard to who paid for the freight, whether the freight cost impacted growers in any way, or whether CHR actually profited—cannot serve as Plaintiffs' damages model under either of Plaintiffs' claims.  To obtain disgorgement, it is Plaintiffs' burden to demonstrate what profits were improperly gained.  *Turnbow v. Life Partners,*

---

[12] Plaintiffs' rely on unpublished appellate cases Minnesota statutory law expressly prohibits citing as precedent. *See Bloomquist v. Wisdom Develop. Group, LLC*, No. A08-0367, 2009 WL 67059 at *4 (Minn., App. 1996) (unpublished); *Brcka v. Falcon Elec. Corp.*, C8-00-1434, 2001 WL 641524 (Minn. App. June 12, 2001) (unpublished).  MINN. ST. SEC. 480A.08(3) expressly provides that "[a] statement of the decision without a written opinion must not be officially published and must not be cited as precedent, except as law of the case, res judicata, or collateral estoppel."

*Inc.*, No. 3:11-CV-1030-M, 2013 WL 3479884, at *18 (N.D. Tex. July 9, 2013). Plaintiffs offer no evidence supporting this, Shaw undertook no such calculation, and, with expert report deadlines expired, Plaintiffs have foreclosed their opportunity to conduct a margins analysis to establish compensatory damages for their breach of fiduciary duty claim.[13]

### b.    "Fee Forfeiture" Is Not Calculable As Class Damages.

Plaintiffs also argue their proposed damages as an equitable remedy in the form of the total or scaled forfeiture of commissions earned by CHR in its marketing and sale of growers' produce. (ECF 159 at 20). To allow Plaintiffs to pursue this relief as a matter of law, the Court must once again extend the public-policy driven, attorney-misconduct *Perl* Cases to commercial transactions. The state appellate cases cited by Plaintiffs do little to lay the foundation to support this. *Commercial Associates, Inc. v. The Work Connection, Inc.*, 712 N.W.2d 772 (Minn. Ct. App. 2006), is facially distinguishable as the breach was for failing to disclose accepting payment from the plaintiff and a third party for the *same* product.[14] Here, the commercial transactions are not double-dipping. Robinson Fresh

---

[13] Plaintiffs also repeatedly and falsely claim CHR admitted at oral argument that it made "secret profit" from grower transactions and has records to demonstrate these amounts. (ECF 159 at 23). CHR has repeatedly denied making "secret profits" from Grower transactions, and the record indicates growers were aware CHR profited on freight transactions. (*See supra*). In light of the parties' obvious dispute on this issue, Plaintiffs' mischaracterizations are at best rhetorical and at worst, a genuine issue of fact precluding Plaintiffs' motion for partial summary judgment on fiduciary duty questions 1 and 2.

[14] Again demonstrating the infirmities of citing to Minnesota appellate cases, Plaintiffs fail to disclose *Commercial Associates* was later remanded on the issue of whether Plaintiff had the right to receive the award sought, leaving this case unresolved at the appellate level. *Commercial Associates, Inc. v. The Work Connection, Inc.*, No. C2-03-8115, 2006 WL 4687275 (Minn. Dist. Ct. 2006). Plaintiffs also cite *Workers' Comp. Reinsurance Ass'n*,

marketed produce on commissions payable by the growers, and CHR brokered freight for its customers at its customers' expense.  The produce was the same, but the *services* were materially different—and CHR is not paid for produce, it is paid for the services it provides growers and customers.  *See, e.g., Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd.*, 439 N.W.2d 418, 422 (Minn. App. 1989) (forfeiture of legal fees charged for services on separate matters inappropriate).  Moreover, Plaintiffs have not provided evidence CHR failed to live up to its contractual obligations in marketing produce, or brokering freight for Delivered sales.  To the contrary, growers understood and expected CHR would both market product and broker freight to customers, as necessary to sell their produce, raising genuine issues of fact as to the propriety of fee forfeiture for calculation of an equitable remedy across the class.

## CONCLUSION

Harm is the foundation of upon which relief is granted in American jurisprudence. Plaintiffs' should not be absolved of this burden because of their inability to establish this essential element.  Accordingly, for the foregoing reasons, CHR respectfully requests the Court grant its Motion for Partial Summary Judgment, deny Plaintiffs' Motion for Partial Summary Judgement, and find Plaintiffs must establish actual harm to recover for the alleged Section 2 violation and breach of fiduciary duty claim.

---

2012 WL 1253094 (unpublished), which as discussed *supra* should be disregarded under MINN. ST. SEC. 480A.08(3), to the extent it is found instructive as non-binding case law.

Date:  June 3, 2022                          Respectfully submitted,

                                             **BARNES & THORNBURG, LLP**

                                             *s/ Mark W. Wallin*
                                             Mark W. Wallin (#0401450)
                                             Christina M. Janice (*pro hac vice*)
                                             One North Wacker Drive, Suite 4400
                                             Chicago, IL 60606-2833
                                             MWallin@btlaw.com
                                             Christina.janice@btlaw.com

                                             Patrick J. Rooney (#0198274)
                                             Bradley R. Hutter (#0396531)
                                             Fafinski Mark & Johnson PA
                                             Flagship Corporate Center
                                             775 Prairie Center Drive, Suite 400
                                             Eden Prairie, MN  55344
                                             (952) 995-9500
                                             *patrick.rooney@fmjlaw.com*
                                             *bradley.hutter@fmjlaw.com*

                                             *Attorneys for Defendants*