UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JMR FARMS, INC., BG CATLIN ENTERPRISES, LLC, GLORY PRODUCE, INC., HOOSIER MELONS, LLC, MELON ACRES, INC., CENTRAL FLORIDA FRUIT SALES, LLC d/b/a SANWAY FARMS, INC., SHORE SWEET GROWERS, LLC, SK ENTERPRISES OF NORTH FLORIDA, INC., WAINWRIGHT BROTHERS FARMS, LLC, WILSON LEE FARMS, BOWLES FARMING COMPANY, INC., BONNE IDEE PRODUCE, LLC, and KEVIN COGGINS d/b/a MEK FARMS, individually and on behalf of all others similarly situated, | Case No. 0:20-cv-00879-PJS-HB |
| Plaintiffs, | **EXPERT REBUTTAL REPORT OF RESOLUTION ECONOMICS, J. DUROSS O'BRYAN, CPA** |
| vs. | Date: May 28, 2024 |
| C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON COMPANY, INC.; and C.H. ROBINSON COMPANY, | |
| Defendants. | |

**TABLE OF CONTENTS**

I. QUALIFICATIONS, BACKGROUND, AND ASSIGNMENT ................................................. 3

II. DOCUMENTS REVIEWED AND/OR RELIED UPON ........................................................... 4

III. SUMMARY OF CONCLUSIONS ............................................................................................ 4

IV. DR. MARKOSYAN'S SIMPLISTIC ARITHMETIC IMPLIES A BUT-FOR WORLD IN WHICH NAST WOULD NO LONGER PROVIDE ITS SERVICES. ............................................ 5

V. RESERVATION ........................................................................................................................ 9

## I.   QUALIFICATIONS, BACKGROUND, AND ASSIGNMENT

1. I am the same Duross O'Bryan who previously submitted an expert report on this matter.[1] Refer to Paragraphs 1 through 5 in the O'Bryan Report, as well as Appendix A attached therein for my curriculum vitae and Appendix B attached therein for a listing of my testifying experience over the last four years. The time I currently spend on this matter is being billed to Defendants at a rate of $875 per hour.

2. This report is focused on two segments of C.H. Robinson Worldwide, Inc. ("CHR" or "Defendants"): North American Surface Transportation ("NAST") and Robinson Fresh ("Fresh"). My understanding is that both NAST and Fresh report financials separately of each other per the C.H. Robinson 10-K.[2] NAST provides freight transportation and logistics services while Fresh provides sourcing services consisting primarily of buying, selling, and/or marketing of produce.[3] The business of logistics falls outside of Fresh, which maintains separate personnel.[4] Refer to Paragraphs 6 through 12 in the O'Bryan Report for further detail.

3. I was engaged by Barnes & Thornburg LLP ("Counsel") for the Defendants to address the following items in the O'Bryan Report: (i) respond to the key conclusions put forth by Dr. Armenak Markosyan ("Dr. Markosyan") in his report dated December 15, 2023 (the "Opening Report") and (ii) respond to the order issued by Judge Patrick J. Schiltz (the "Order") on March 1, 2023, noting that if the "economic impact of the freight markup was borne by the Growers, not the Buyers," then potential damages must be calculated.[5] The Order tasked the parties with proving if the Growers bore the economic impact of CHR's shipping business.

---

[1] Expert Rebuttal Report of J. Duross O'Bryan, CPA, January 22, 2024 ("O'Bryan Report").
[2] C.H. Robinson 2022 Form 10-K (https://s21.q4cdn.com/950981335/files/doc_financials/2022/ar/chrw-2022-annual-report-10-k.pdf), p. 3.
[3] See *id*.
[4] Deposition of C.H. Robinson Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company, V I, pp. 23-25.
[5] Order from Judge Patrick J. Schiltz dated March 1, 2023 (the "Order"), p. 18.

4. Since the issuance of the O'Bryan Report, Dr. Markosyan submitted a rebuttal report dated March 1, 2024 (the "Markosyan Rebuttal"). The Markosyan Rebuttal discusses how Growers were allegedly impacted by freight markups when products were Delivered. Counsel has engaged me to respond to the Markosyan Rebuttal. Refer to the O'Bryan Report for definitions of capitalized terms not defined herein.

5. Among other points, I explained in the O'Bryan Report that (i) the data provided does not support Growers' theory that CHR's shipping practices economically harmed Growers[6] and (ii) Fresh and NAST are separate entities and independently incentivized to maximize their respective profits.[7] I did not, however, explain why NAST's shipping profits need to exist and why they cannot be shared with or allocated to Fresh.

## II. DOCUMENTS REVIEWED AND/OR RELIED UPON

6. In preparing my opinions in this report, I considered the same documents and data presented in Appendix C of the O'Bryan Report, with the addition of the Markosyan Rebuttal and Dr. Markosyan's production related to that report, as well as publicly available filings. For a list of all documents relied upon in this report, refer to **Appendix A**.

## III. SUMMARY OF CONCLUSIONS

7. Below is a summary of my conclusions related to the Markosyan Rebuttal:

- Dr. Markosyan's simplistic arithmetic has no founding in real world application.

---

[6] See Section V of the O'Bryan Report.
[7] See paragraph 44 of the O'Bryan Report.

- Dr. Markosyan's report implies a but-for world in which NAST, without earning a profit, would cease providing its services as it relates to providing Delivered products on behalf of Growers, potentially at the detriment of Growers.

- NAST is entitled to earn a profit like any capitalist business and Dr. Markosyan ignores this concept when forming his opinions.

### IV. DR. MARKOSYAN'S SIMPLISTIC ARITHMETIC IMPLIES A BUT-FOR WORLD IN WHICH NAST WOULD NO LONGER PROVIDE ITS SERVICES.

8. Figure 4 in the Markosyan Rebuttal demonstrates that the Buyer's purchase price is the sum of the FOB Price, NAST's shipping cost, and NAST's shipping profit. The FOB Price includes both Fresh's cost, i.e. the amount remitted to the Grower (typically 90% of the FOB Price), and Fresh's profit, i.e., the commissions earned by Fresh (typically 10% of the FOB Price). Similarly, the total price of shipping included in the Buyer's purchase price is comprised of the cost and profit of NAST's shipping services. The shipping cost represents the amount of money NAST expends to provide their service and the shipping profit represents any amount earned by NAST, beyond its costs, for the transportation services it provides. CHR describes a portion of its "Transportation and Logistics Services" in its 2023 10-K as follows: "We analyze customers' current transportation rate structures, modes of shipping, and carrier selection. We identify opportunities to consolidate shipments for cost savings. We suggest ways to improve operating and shipping procedures and manage claims. We help customers minimize storage […]."[8] I understand there are no contracts with Growers which indicate that NAST is not entitled to earning profits, or that Growers are entitled to NAST's profits.

---

[8] C.H. Robinson 2023 Form 10-K
(https://www.sec.gov/ix?doc=/Archives/edgar/data/1043277/000104327724000011/chrw-20231231.htm), p. 5.

9. The economics behind every component of Figure 4 are generally inherent in for-profit businesses, as profits are generally necessary for businesses to survive. Dr. Markosyan uses the simple summation equation listed in paragraph 8 above and concludes that if NAST's shipping profit was reallocated to the FOB Price, the Buyer would pay the same price and the Grower would be better off economically.[9] Dr. Markosyan demonstrates two points with this assertion: (i) his ability to perform simple arithmetic (adding and subtracting the same value from one side of an equation does not impact the other side of the equation), and (ii) his lack of understanding that in business, economics, statistics, and mathematics, an equation, or operation on an equation, is only as useful as its corresponding real-world theory. The real-world theory behind Dr. Markosyan's reallocation of NAST's profit to the FOB Price implies that NAST neither requires nor has the right to profit from its services. As Judge Schiltz stated in the motion hearing on March 15, 2024, he agrees that NAST is entitled to a profit if it is not a charity organization: "[CHR] could have been more competitive in their bidding, or they could have just gotten out of the business of doing [Delivered sales] – you know, if they can't make a profit on it, they can't – *they're not running the business as a charity*."[10] (emphasis added) Further, in my over 40 years' experience, which includes working on hundreds of audit and attest engagements at Peat Markwick Mitchell & Co. and PwC, and testifying in various economic damages and business valuation cases, the concept of making a profit is foundational to the business world. The basic objective of business is to create value for its owners by earning a profit (and a company that continually operates at a loss

---

[9] Markosyan Rebuttal, paras. 26-30.
[10] Transcript of Motion Hearing before the Honorable Patrick J. Schiltz, United States District Court Judge, in the matter of *JMR Farms, Inc., et al., individually and on behalf of all others similarly situated vs. C.H. Robinson Worldwide, Inc., et al*, dated March 15, 2024, p. 26, 8 – 12.

will eventually cease to exist) and is a basic principle taught in many accounting textbooks and at universities.[11,12,13,14]

10. Dr. Markosyan claims that Plaintiffs are entitled to not only the FOB Price of produce in Delivered transactions, but also to profits from the transportation services provided by NAST's operations on Delivered transactions. Dr. Markosyan states: "had CHR added freight markup to the FOB Prices, *in line with Plaintiffs' theory of harm*, Growers' revenue from the Delivered sales would be higher regardless of how they compare to the FOB prices from the Direct sales." (emphasis added) This statement shows that Dr. Markosyan's conclusions are based not on the framework that Growers experienced economic harm through a lower FOB Price (when comparing Direct versus Delivered transactions), but rather that Growers are entitled to the profits of a logistics company when Growers are not contracted with CHR to provide any of the services that NAST provides. In other words, Dr. Markosyan implies that Growers should actually earn more revenue on Delivered transactions than Direct transactions. I am unaware of any rationale to support such a claim.

---

[11] Kemp, Robert S., and Jeffrey Waybright. *Financial Accounting*. Pearson, 2021, p. 4. Per p.4: "The goal of a business is to create value for its owners. Owners expect a profit that compensates them for the use of their money over time and for the risk they assume. If the business does not create value, owners will not provide the money needed to operate the business. *Without the business, customers, suppliers, employees, and society will not receive the value they seek*. A business must create value for its owners." (emphasis added)

[12] Meigs, Robert F., et al. *Accounting: The Basis for Business Decisions*. McGraw-Hill, 1993, p. 28, p.105. Per p.28: "A company that continually operates unprofitably will eventually exhaust its resources and be forced out of existence." Per p.105: "In Chapter 1, we stated that a basic objective of every business is to earn a profit, or net income."

[13] "Understanding Profitability: Ag Decision Maker." *Iowa State University Extension and Outreach*, www.extension.iastate.edu/agdm/wholefarm/html/c3-24.html. Accessed 13 May 2024. Per the article: "Profitability is the primary goal of all business ventures. Without profitability the business will not survive in the long run."

[14] "The Triple Bottom Line: What It Is & Why It's Important." *Business Insights Blog*, 8 Dec. 2020, online.hbs.edu/blog/post/what-is-the-triple-bottom-line. Accessed 13 May 2024. Per the article: "In a capitalist economy, a firm's success most heavily depends on its financial performance, or the profit it generates for shareholders."

11. As I stated in Section VI of the O'Bryan Report, "…freight profits earned by NAST are part of its normal course of business and NAST and Fresh are independent entities."[15] If NAST and Fresh adopted Dr. Markosyan's proposed practice of shifting NAST's profit margin to the FOB Price, NAST would no longer make a profit by assisting Fresh in delivering Grower products. Without making a profit NAST would have no clear economic reason to maintain this service and would likely cease providing its services to Fresh.[16] As a result, if CHR could no longer offer Delivered transactions to Buyers, Buyers wanting Delivered produce would be obligated to choose between the following options: (i) change their preferences from desiring Delivered produce to simply accepting Direct produce, or (ii) seek an alternative produce broker who can both organize and provide shipping. In (i), this requires Buyers in a competitive marketplace to change their preferences, in which case Grower revenue would not be impacted (as true with all Direct transactions). In (ii), Grower revenue is lost as Buyers look elsewhere for their Delivered products. For any Buyers who opt for (ii) and are forced to look elsewhere for their Delivered produce needs, Growers lose that potential 90% of related FOB Price. Those potential lost sales would represent damages caused by Dr. Markosyan's theory, not CHR since those lost sales would be attributed to the proposed reallocation of shipping profit from NAST to the FOB Price.

12. Dr. Markosyan fails to acknowledge that real-world constraints impact his equation (the sum of FOB Price, shipping cost, and shipping profit equals buyer price). Fresh is bound by market FOB Prices and operating costs, NAST is bound by similar market forces and cannot reduce its shipping profit below the break-even point (whereby cost and revenue are equal). Without Dr. Markosyan comparing the conclusion of his statistical analyses to a real-world context, the conclusion of his analyses must be questioned to confirm whether it yields meaningful real-world

---

[15] O'Bryan Report, p. 73.
[16] This does not imply that NAST will cease to exist, as they have other clients and revenue streams.

8

results. Checking the reasonableness of a conclusion is a basic requirement of any economist or expert witness. Dr. Markosyan provides conclusions from his academic statistical analyses which are disconnected from reality. Dr. Markosyan's never fully considers the but-for world stemming from his assertions. That resulting but-for world includes NAST voluntarily operating without a profit, a concept which should undermine Mr. Markosyan's related opinions. Applying this concept to a real-world example, Yellow Corporation, a former Fortune 500 company in the transportation industry, filed for bankruptcy in August 2023 as it did not remain profitable, as stated in an article by CNN.[17]

13. After ignoring Dr. Markosyan's zero profit theory, the only way to test if the Growers were economically harmed by CHR's shipping practices is to compare the Direct FOB Price versus the Delivered FOB Price. Please see Section V in the O'Bryan Report for the detailed results of my analyses on this topic for which my findings were that the data does not support that the Growers were economically harmed. Dr. Markosyan's analyses appears to be biased towards the Plaintiffs and should not be relied upon for all of the reasons outlined in this report.

## V. RESERVATION

14. I reserve the right to supplement and/or amend my opinions in this matter as necessary in response to any new or updated opinions as set forth by an opposing expert, as well as in response to additional documents or information that may be made available for my review. Further, I may independently create, or be asked by Counsel to create, exhibits after the issuance of this report.

---

[17] Isidore, Chris, and Michelle Toh. "30,000 workers bid goodbye to 99-year-old Yellow as it files for bankruptcy." CNN, 7 August 2023, www.cnn.com/2023/08/07/business/yellow-bankruptcy-filing/index.html#:~:text=business%20in%202002.-,Yellow%20Corp.,of%2022%2C000%20Teamsters%20union%20members. Accessed 9 May 2024. The article states: "Nightingale said that while Yellow could have been profitable when demand for trucking was strong, it couldn't survive in the face of the slowdown in freight, and the drop in trucking rates that went with it."

These exhibits may then be used as demonstratives during the trial. In support of my opinions, I may also use any of the previously produced documents referred to in the body of this preliminary disclosure/report or in any Exhibit hereto, including the list of categories of materials I reviewed informing my preliminary opinions herein.

This report has been prepared on May 28, 2024 by:

_____

J. Duross O'Bryan, CPA

# Appendix A
# Documents Reviewed and/or Relied Upon

| | Bates/Description |
|---|---|
| **Court Filings** | |
| 1 | [JMR Farms v. CHR] Plaintiffs' Reply in Support of Motion for Class Certification |
| 2 | 031524-PJS-20cv879-PKR |
| 3 | JMR MPSJ Order |
| | |
| **Depositions** | |
| 1 | Deposition Transcript Volume 1 - 30(b)(6) June 23, 2021(20407755.1) |
| | |
| **Expert Reports** | |
| 1 | [JMR Farms v. CHR] Markosyan Reply Report |
| 2 | CHR_Expert Report of J. Duross O'Bryan - Signed with attachments - 20240122 |
| | |
| **Publicly Available info** | |
| 1 | CHR 10-K 2023 |
| 2 | Textbook - Accounting - The Basis For Business Decisions, Ninth Edition, p28, p105 |
| 3 | Textbook - Financial Accounting, p. 4 |
| 4 | Article - Understanding Profitability Iowa State |
| 5 | Article - The Triple Bottom Line_ What It Is & Why It's Important |
| 6 | Article - 30,000 workers bid goodbye to 99-year-old Yellow as it files for bankruptcy _ CNN Business |