UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JMR FARMS, INC.; MELON ACRES, INC.; CENTRAL FLORIDA FRUIT SALES, LLC, d/b/a Sanway Farms, Inc.; KEVIN COGGINS, d/b/a MEK Farms; HOOSIER MELONS, LLC; SHORE SWEET GROWERS, LLC; BONNE IDEE PRODUCE, LLC; BOWLES FARMING COMPANY, INC.; WAINWRIGHT BROTHERS FARMS, LLC; GLORY PRODUCE INC.; and SK ENTERPRISES OF NORTH FLORIDA, INC., individually and on behalf of all others similarly situated, | Case No. 20-CV-0879 (PJS/ECW) |
| Plaintiffs, | |
| v. | ORDER |
| C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON COMPANY, INC.; and C.H. ROBINSON COMPANY, Defendants. | |

---

Richard M. Paul III and Laura C. Fellows, PAUL LLP; Francisco Guerra, IV, Jennifer Neal, and Mark Fassold, WATTS GUERRA LLP; Robert A. Pollom, THE LAW OFFICES OF ROBERT A. POLLOM, PLLC; and Craig A. Stokes, STOKES LAW OFFICE LLP, for plaintiffs.

Mark W. Wallin, Christina M. Janice, and Benjamin Perry, BARNES & THORNBURG, LLP, for defendants.

Plaintiffs brought this putative class action against defendants C.H. Robinson

Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company

(collectively "CHR"), alleging violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., and breach of fiduciary duty.[1]

This matter is before the Court on the motion of plaintiffs Bonne Idee Produce, LLC ("Bonne Idee") and Bowles Farming Company, Inc. ("Bowles") to certify a class under Fed. R. Civ. P. 23(a) and (b)(3) on their PACA and fiduciary-duty claims. The Court was initially inclined to grant plaintiffs' motion, but after a close review of the record and further research, the Court concludes that the motion must be denied.

## I. BACKGROUND

Plaintiffs are a group of produce farmers who contract with CHR (a logistics company) to sell their produce to grocery stores, restaurants, wholesalers, and other buyers. At issue in this case are "delivered-sale transactions," in which CHR not only sells the produce on the grower's behalf, but also arranges to transport the produce to the buyer, typically by contracting with a third-party freight company. The buyer pays CHR a lump sum that covers both the cost of the produce and the cost of the freight. CHR deducts the freight charge, leaving what the parties call the "FOB price." CHR is compensated by a commission calculated as a percentage of the FOB price. Paul Decl. [ECF No. 194] Ex. 13 at 18. After deducting the commission and any advances and

---

[1]Plaintiffs have also brought contract claims, but do not seek to certify them for class treatment.

expenses that CHR paid on the grower's behalf, CHR remits the remainder of the FOB

price to the grower. *Id.*

Plaintiffs allege that, in delivered-sale transactions, CHR did not just take the

agreed-upon commission, but also paid itself an additional, undisclosed fee in the form

of a markup on the cost of freight. In an earlier order, the Court explained how this

practice (which plaintiffs refer to as "freight topping") works:

> Suppose that Kowalski's Markets pays $125 to CHR
> for a bin of watermelons delivered to one of its grocery
> stores in Minnesota. And suppose that CHR pays a trucking
> company $25 for transporting that bin of watermelons from
> Bonne Idee's farm in Louisiana to the Kowalski's store in
> Minnesota. According to plaintiffs, CHR does not simply
> pay the remaining $100 to Bonne Idee (minus CHR's
> commission). Instead, CHR deducts an additional fee (say,
> $15), which CHR portrays as compensation for the time it
> devoted to arranging for the trucking company to transport
> the watermelons to Kowalski's. *See* Paul Decl. Ex. 9 at 20.
> When plaintiffs refer to "freight topping," they are
> describing CHR's practice of "topping" the actual freight
> charge (i.e., the $25 paid to the trucking company) with this
> ($15) markup.

> Plaintiffs allege that CHR hid this practice from them.
> According to plaintiffs, "CHR's accounting of [delivered-
> sale] transaction[s] to the Plaintiffs disclosed only the FOB
> price; it did not disclose the freight markup or the total sales
> proceeds." Pl. Memo. at 5. Moreover, plaintiffs contend that
> even though the buyers are nominally responsible for all
> freight-related charges (including the freight markup), the
> growers bear the economic impact of freight topping.
> According to plaintiffs, when a customer such as Kowalski's
> pays a particular amount for a bin of produce delivered to its

door ($125 in the above example), that customer does not
know or care what portion is allocated to produce and what
portion is allocated to freight, freight markups, or something
else.  Meanwhile, CHR has exclusive control over this
allocation, and CHR has an incentive to allocate more of the
delivered-sale price to freight markups (all of which CHR
can keep as pure profit) than to the FOB price (only some of
which CHR can keep as commissions).  Because freight
topping lowers the FOB price, plaintiffs say, they end up
bearing the economic impact of the practice.

The following chart demonstrates plaintiffs' theory of
harm:

| **Without Freight Topping** | **With Freight Topping** |
| --- | --- |
| Delivered-sale price: $125/bin<br><br>Cost of freight: $25/bin<br><br><br><br>FOB price: $100/bin ($125/bin – $25/bin freight)<br><br>CHR keeps $10/bin (10% commission) | Delivered-sale price: $125/bin<br><br>Cost of freight: $25/bin<br><br>Freight markup: $15/bin<br><br>FOB price: $85/bin ($125/bin – $40/bin freight + markup))<br><br>CHR keeps $23.50/bin ($8.50 (10% commission) + $15 markup) |
| Sales returns to plaintiffs:<br><br>$90/bin ($100 FOB – $10 commission) | Sales returns to plaintiffs:<br><br>$76.50/bin ($85 FOB – $8.50 commission) |
| **Plaintiffs receive $13.50/bin *less* with freight topping** ||

ECF No. 189 at 4–6.[2]

In October 2021, plaintiffs moved to certify a class of similarly situated produce farmers.  ECF No. 89.  At the conclusion of the hearing on plaintiffs' motion, the Court determined that certain threshold legal issues—specifically, whether plaintiffs could recover on their PACA and fiduciary-duty claims without proving actual harm—needed to be resolved before the Court could decide whether to certify a class.  Accordingly, the Court denied plaintiffs' motion without prejudice and directed the parties to file cross-motions for summary judgment on these issues.  ECF Nos. 136, 142.

Following briefing and a hearing, the Court held that plaintiffs need not prove actual harm to recover on either claim, but that they must show that they bore the economic impact of the freight markup.  ECF No. 189 at 10–11, 17–18 & n.9.  In other words, the Court held that plaintiffs must show that, had CHR not taken a freight markup, CHR would have paid them a higher FOB price.  But the plaintiffs need not show that, had CHR disclosed the freight markup, the plaintiffs would not have done business with CHR and gotten paid more by a different logistics company.  ECF No. 185 at 5–9.

---

[2]When citing documents by ECF number, the Court cites to the page numbers generated by the Court's docketing system.

## II.  ANALYSIS

### A.  Standard of Review

"To certify a class, a district court must find that the plaintiffs satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b)."  *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984 (8th Cir. 2021).  "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied."  *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  Plaintiffs bear the burden of showing that a class should be certified and that the requirements of Rule 23 are met.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### B.  Rule 23(b)

Plaintiffs seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Rule sets forth certain factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

As noted, plaintiffs seek class certification of two claims: their claim under PACA and their fiduciary-duty claim. Both of these claims require plaintiffs to show that they bore the economic impact of the freight markups—that is, that while in *form* the markup was paid by the buyer, in *substance* it was the plaintiffs who actually "paid" the markup in the form of a reduced FOB price. ECF No. 189 at 8–11 & n.9.

At first blush, determining who bore the economic impact of the freight markup appears to be a common question capable of resolution on a classwide basis. Plaintiffs' main argument is that, as a simple mathematical truism, they bore the economic impact because any increase in freight charges necessarily reduced the FOB price. Plaintiffs offer expert testimony that this analysis is accurate not only as a matter of math, but also as a matter of fundamental principles of economics. ECF No. 210 at 15.

Having carefully reviewed the record, however, the Court concludes that plaintiffs' theory is based on an oversimplification of the manner in which delivered-sale transactions are conducted. Again, the premise of plaintiffs' theory is that CHR quotes an all-in price to buyers and then has unfettered discretion in deciding how to

allocate that amount between the FOB price, on the one hand, and shipping charges (including the freight markup), on the other.

But CHR offers evidence that the FOB price and shipping charges are determined separately in *advance* of each transaction and that, at least sometimes, shipping costs are disclosed to buyers during negotiations.  ECF No. 204 ¶¶ 6–20; Wallin Decl. [ECF No. 205] Ex. 18 at 226–28.  Moreover, buyers use information about the shipping costs to determine whether to arrange for shipping themselves; buyers also let CHR know when they believe that delivery costs are too high.  ECF No. 204 ¶ 20, Wallin Decl. [ECF No. 205] Ex. 18 at 227–28.  This evidence is at odds with plaintiffs' theory that CHR quotes a single, all-in price; that all buyers are indifferent to the breakdown between the cost of produce and the cost of shipping; and that CHR always allocates the all-in price between produce and shipping after the buyer agrees to pay it.  More importantly, this evidence also indicates that determining who bore the economic impact of the freight markup with respect to any particular transaction will depend on numerous variables, including the buyer's and the grower's sophistication, market power, and knowledge of current market prices for shipping and produce.  Multiplying these variables across different types of produce, with different growing seasons, consumer demand, supply fluctuations, and shipping requirements, renders the issue even more complex.

It is also worth noting that, according to CHR's expert's analysis, growers generally get *higher* FOB prices in delivered-sale transactions than they do for other types of transactions. ECF No. 199 at 24–60. In addition, when shipping costs exceed the agreed price, it is CHR, not the grower, who absorbs the loss. ECF No. 204 ¶ 21. This evidence confirms that the issue of economic impact cannot be easily reduced to a mathematical formula and further undermines plaintiffs' theory that, after the buyer agrees to pay an all-in price, CHR allocates that all-in price between FOB and shipping in a manner that maximizes CHR's profits.

In light of this evidence, the Court concludes that it is highly likely that the factors that bear on the issue of who bore the economic impact of the freight markup will vary materially from transaction to transaction. It is conceivable (although unlikely) that, in each and every transaction, the grower bore the economic impact of the freight markup. But a factfinder could not reach that conclusion without first examining all of the relevant factors with respect to each relevant transaction.

In short, the Court concludes that the economic impact of the freight markup cannot be resolved on a classwide basis. Given that economic impact is an essential element of plaintiffs' PACA and fiduciary-duty claims, and given the need to assess economic impact on a transaction-by-transaction basis, the Court cannot say that common questions predominate in this action. *Cf. Ford v. TD Ameritrade Holding Corp.*,

No. 22-3232, 2024 WL 4021358, at *3 (8th Cir. Sept. 3, 2024) ("Determining whether a customer was harmed involves individualized questions about the type of trade, prices received, and other prices available, so certification is not appropriate."); *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 622 (8th Cir. 2021) ("Even with the proposed algorithm, however, we conclude that determining economic loss in this case entails individualized inquiry inconsistent with the predominance requirement of Rule 23."). Plaintiffs' motion for class certification is therefore denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT plaintiffs' motion for class certification [ECF No. 191] is DENIED.

Dated:  September 9, 2024                            s/Patrick J. Schiltz
                                                     Patrick J. Schiltz, Chief Judge
                                                     United States District Court