UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JMR FARMS, INC.; MELON ACRES, INC.; KEVIN COGGINS, d/b/a MEK Farms; HOOSIER MELONS, LLC; SHORE SWEET GROWERS, LLC; BONNE IDEE PRODUCE, LLC; BOWLES FARMING COMPANY, INC.; WAINWRIGHT BROTHERS FARMS, LLC; GLORY PRODUCE, INC.; SK ENTERPRISES OF NORTH FLORIDA, INC.; and SANWAY FARMS, INC., individually and on behalf of all others similarly situated, | Case No. 20-CV-0879 (PJS/ECW) |
| Plaintiffs, | |
| v. | |
| C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON COMPANY, INC.; and C.H. ROBINSON COMPANY, | ORDER |
| Defendants. | |

Richard M. Paul III and Laura C. Fellows, PAUL LLP; Francisco Guerra, IV, Mark Fassold, and Jennifer A. Neal, GUERRA LLP; Robert A. Pollom, THE LAW OFFICES OF ROBERT A. POLLOM, PLLC; and Craig A. Stokes, STOKES LAW OFFICE LLP, for plaintiffs.

Mark W. Wallin, Benjamin Perry, and Sarah E. Brown, BARNES & THORNBURG, LLP; and Patrick J. Rooney and Bradley R. Hutter, FAFINSKI MARK & JOHNSON PA, for defendants.

Plaintiffs brought this putative class action against defendants C.H. Robinson

Worldwide, Inc., C.H. Robinson Company, Inc., and C.H. Robinson Company

(collectively "CHR"), alleging violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., breach of contract, and breach of fiduciary duty. This matter is before the Court on plaintiffs' motion to reconsider the Court's denial of class certification on their fiduciary-duty claims. For the reasons that follow, the motion is denied.

## I. BACKGROUND

### A. Plaintiffs' Claims

Plaintiffs ("Growers") are a group of produce farmers who contracted with CHR (a logistics company) to sell their produce to grocery stores, restaurants, wholesalers, and other buyers. At issue in this case are "delivered-sale transactions," in which CHR not only sells the produce on the grower's behalf, but also arranges to transport the produce from the grower to the buyer, typically by contracting with a third-party freight company. The buyer pays CHR a lump sum that covers both the cost of the produce and the cost of the freight. CHR deducts the freight charge, leaving what the parties call the "FOB price." CHR is compensated by a commission calculated as a percentage of the FOB price. After deducting the commission and any advances and expenses that CHR paid on the grower's behalf, CHR remits the remainder of the FOB price to the grower.

That, at least, is the way that Growers understood delivered-sale transactions to work.  In this litigation, however, Growers allege that CHR deducted not just the cost of the freight, but also deducted an undisclosed markup on the freight charge.  In other words, Growers allege that CHR paid itself not only the agreed-upon commission, but also an additional, undisclosed fee in the form of a markup on the cost of freight.

### B.  Procedural History

In October 2021, Growers moved to certify a class of similarly situated growers. ECF No. 89.  At the conclusion of the hearing on Growers' motion, the Court determined that certain threshold legal issues—specifically, whether Growers could recover on their PACA and fiduciary-duty claims without proving actual harm—needed to be resolved before it could decide whether to certify a class. Accordingly, the Court denied Growers' motion without prejudice and invited the parties to file cross-motions for summary judgment on these issues.  ECF Nos. 136, 142.

Following briefing and a hearing, the Court held that Growers need not prove actual harm to recover on either claim; in other words, the Court held that Growers did not need to prove that, had they been informed of the freight markup, they could have negotiated a better deal from CHR or another logistics company.  The Court also held, though, that Growers did need to prove that they bore the economic impact of the freight markup; in other words, the Court held that the Growers needed to prove that,

although the freight markup was nominally paid by the buyer, the economic impact of the markup in fact fell on the Growers.  ECF No. 189 at 8–11, 17–18 & n.9.[1]

Following the Court's rulings, Growers renewed their motion for class certification.  ECF No. 191.  Although the Court was initially inclined to certify the proposed class, the Court ultimately denied Growers' motion after concluding that the question of whether the Growers bore the economic impact of the freight markups was not susceptible to resolution on a classwide basis.  ECF No. 226 at 7–10.

CHR then moved for summary judgment, which the Court granted as to Growers' PACA and contract claims.  The Court denied the motion as to Growers' fiduciary-duty claims, however, finding that, as a matter of law, CHR owed Growers fiduciary duties.[2]

As part of its analysis of the fiduciary-duty claims, the Court partially reconsidered its view on Growers' burden with regard to economic impact.  ECF No. 247 at 18–22.  The Court previously had held—and continues to hold—that, under the *Perl* line of cases, a fiduciary that breaches its duty forfeits its right to compensation.  *Id.* at 19 (citing *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982)).  In the delivered-sale

---

[1]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the document.

[2]The Court also found that CHR had breached those duties.  After CHR moved for clarification, the Court agreed that the finding of breach was premature.  *See* ECF No. 276.

transactions at issue in this case, CHR received two forms of compensation: (1) the freight markups and (2) the sales commissions.

*Freight Markups:*  As a formal matter, the produce buyers, not Growers, paid the freight markups.  To recover the markups, therefore, Growers have to prove that they, in fact, paid the freight markups.  In other words, the Growers have to prove that, notwithstanding the manner in which the transaction was formally structured, Growers, not the produce buyers, bore the economic impact of (and thus "paid") the markups.  The Court's view on freight markups has not changed.

*Sales Commissions:*  With respect to the sales commissions, however, there is no dispute that Growers bore the economic impact.  Consequently, Growers need only establish a breach of fiduciary duty to be entitled to recover whatever commissions they paid.  When the Court previously denied class certification, it did so on the assumption that economic impact would have to be proven with respect to both freight markups and sales commissions.  But after belatedly recognizing that economic impact would be undisputed with respect to sales commissions, the Court invited Growers to move for reconsideration of the class-certification order.  *Id.* at 21.

## II. ANALYSIS

### A. *Standard of Review*

"To certify a class, a district court must find that the plaintiffs satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b)."  *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984 (8th Cir. 2021).  "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied."  *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  Plaintiffs bear the burden of showing that a class should be certified and that the requirements of Rule 23 are met.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### B. *Rule 23(b)(3)*

Growers seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Having considered the matter anew, the Court again finds that class certification is not appropriate, both because common questions do not predominate and because a class action is not superior.

To begin with, as CHR points out, Growers' briefing assumes that the Court's ruling that CHR owed the named plaintiffs fiduciary duties is applicable, without any further analysis, to the entire proposed class. But at the time it issued that ruling, the Court had denied class certification, and thus its summary-judgment ruling was based on a record that pertained only to the named plaintiffs. The Court was not called upon to decide, for example, anything about the contents of the contracts between CHR and unnamed class members. This means that the issue of whether CHR owed fiduciary duties to *all* members of the proposed class would either have to be tried (which would significantly complicate the scheduled trial) or be the subject of another round of dispositive motions (which would further delay this already much-delayed case). At least at this stage, class certification would complicate and delay, rather than streamline and expedite, resolution of this case.

Relatedly, it is not clear to the Court that the question of whether CHR owed fiduciary duties to every class member would be a common question. In finding that CHR owed fiduciary duties to Growers, the Court considered, among other things, the terms of the parties' contracts, including whether title over the goods to be sold passed to CHR or instead remained with Growers. CHR contends that Growers' 82-page exhibit summarizing the contents of the relevant contracts, *see* ECF No. 121, ignores or mislabels agreements in which title transferred to CHR. CHR also cites an example of a

-7-

contract in which title did, in fact, transfer to CHR.  *See* ECF No. 205-28 at 7.  Growers

downplay this evidence, contending that any contract in which title was transferred

would not be a consignment transaction and would therefore be excluded from class

recovery.[3]  If that is true, then class recovery could be significantly complicated by the

need to comb through the approximately 1,400 individual contracts that are potentially

at issue in order to identify any transaction in which title passed.[4]  ECF No. 251 at 11;

ECF No. 205-2 ¶ 5.  More generally, the number of contracts at issue weighs heavily

against class certification, as the Court cannot simply take Growers' word for it that

there are no relevant differences among them.

The Court is likewise not convinced that the question of breach of fiduciary duty

is common across the class.  As noted, the Court found that, as to the named plaintiffs,

CHR owed fiduciary duties, including the "duty to disclose any material matter bearing

upon the [agent's] duty to represent the [principal] with undivided loyalty."  ECF

No. 247 at 15 (quoting *Perl*, 320 N.W.2d at 410).  The Court also noted that "CHR could

---

[3]Notably, Growers made a different argument in their previous motion to certify: They contended that the cited contract "still involves consignment transactions because title only passed to CHR after the price was negotiated and a bill of lading prepared." ECF No. 208 at 18.

[4]Growers also point out that the sample contract in which title transferred (which is dated February 1, 2013) is from outside the class period.  But Growers themselves, at the summary-judgment stage, relied on two contracts dating from 2012.  ECF No. 237 ¶¶ 37, 42 & Exs. 35, 40; ECF Nos. 237-5, 237-10; *see* ECF No. 233 at 49.

have avoided any breach by simply *disclosing* its profits on freight to Growers, which disclosure would have allowed Growers to decide for themselves whether to continue to engage in delivered-sale transactions or whether to choose a different sales agent." *Id.* at 17 n.3 (citing *Perl*, 320 N.W.2d at 411).

In determining the scope of a fiduciary's duty to disclose, however, courts take into consideration not only whether there was a disclosure—and, if so, the nature of that disclosure—but also the sophistication and knowledge of the beneficiary and the nature of the information that the fiduciary was required to disclose to the beneficiary. *See, e.g., Lindquist & Vennum, P.L.L.P. v. Speciale*, No. 05-CV-0597 (PJS/JJG), 2008 WL 906282, at *9 (D. Minn. Mar. 28, 2008) (rejecting a client's non-disclosure claim against her attorney because the client herself was "a sophisticated attorney" and "[t]here was no need for Lindquist to point out the obvious"). Notably, there is evidence that Bonne Idee Produce, LLC ("Bonne Idee")—one of the two proposed class representatives— was aware that CHR made a profit on freight brokerage. In particular, in an August 2017 email exchange with CHR, Bonne Idee's then-chief financial officer complained that "[i]t appears to me the only people making money in this deal is Robinson Fresh on commission *and CH Robinson on brokering the freight*." ECF No. 205-34 (emphasis added). CHR also offers evidence that Growers were generally aware of CHR's freight-brokerage business and that profit-making in freight brokerage is common knowledge

in the industry.  Assessing each grower's sophistication and knowledge of the industry is therefore likely to be a significant—and, of course, highly individualized—issue.

Finally, the Court is not convinced that a class action is superior to other available methods for resolving the controversy.  This is not a case in which the value of individual class members' claims is likely too small to justify individual lawsuits.  *Cf. Moore v. C.H. Robinsons Worldwide, Inc.*, No. 20-CV-0252 (PJS/ECW), ECF No. 249 at 14–18 (D. Minn. Aug. 21, 2025) (awarding CHR millions of dollars in lost commissions against two growers who failed to provide the contractually promised volume of produce over a period of three years); *cf. In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1009 (D. Minn. 2023) ("Class actions are also superior if the alleged damages are small, and absent a class action most plaintiffs would not realistically have a day in court.").

In addition, a large majority of the class consists of foreign growers, ECF No. 213 at 67, which raises concerns about whether the foreign jurisdictions in which these proposed class members reside would give preclusive effect to this Court's judgment. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 263–64 (2d Cir. 2016) (explaining that, in determining whether to certify a class containing foreign class members, a district court may consider whether foreign courts will give preclusive effect to a class-action judgment).  Growers offer the testimony of a legal expert, who opines about the

enforceability of a U.S. judgment in 12 of the countries in which class members reside. But the expert admits that class actions are not common in those countries—and further admits that he himself is not familiar with Fed. R. Civ. P. 23 or class-action procedures— which undermines his conclusion that foreign jurisdictions would consider a judgment in this case to comport with due process. *See* Kozolchyk Dep. 61–63, 71–72, 96–98, 102–03 [ECF No. 112-49]. Indeed, the expert testified that he could not opine on whether the notice procedures in a Rule 23 opt-out class action are sufficient to obtain a finding of enforceability in *any* of the countries he reviewed. *Id.* at 71–72, 112–14.

For these reasons, the Court finds that common issues do not predominate and that a class action is not superior to other available methods for resolving this controversy. The Court will not certify a class.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiffs' motion to reconsider [ECF No. 250] is DENIED.

Dated:  June 1, 2026                    /s/ Patrick J. Schiltz
                                        Patrick J. Schiltz, Chief Judge
                                        United States District Court